Miles, et al. *v.* Myatt.

Dec. 8, 1952

No. 38535      11 Adv. S. 12      61 So. 2d 390

*M. M. Roberts,* for appellants.

*Davis & Dabbs* and *Yeager & Yeager,* for appellee.

ROBERDS, P. J.

This is a claim under the Workmen's Compensation Act of Mississippi. The injury resulted from horseplay. The attorney referee, the full commission and the circuit court all held the claim compensable. The employer and carrier appeal.

The sole question is whether this Court will, or will not, permit recovery for injury resulting from horseplay engaged in by two employees. A clearer picture of the foundation of the claim will be revealed by summarizing and setting out the pertinent testimony descriptive of the manner in which the injury occurred, about which there is no dispute.

Myatt, the claimant, and Jack Rayburn were friends, and both were employed, and working at a sawmill operated by Joe N. Miles & Son in the City of Lumberton, Lamar County, Mississippi, on the 12th day of October, 1950. Myatt testified:

"A. I went to work around six-thirty that morning and loaded my truck, and it was getting around seven o'clock, I imagine, and I went back in the planer mill for Mr. Seals to make a ticket out on my load. And while I was there I got to talking to Jack Rayburn.

"Q. What was Mr. Seals doing during that time? A. He was making out my ticket on my load of lumber, and I got to talking with Jack.

"Q. Who is Jack Rayburn? A. Jack Rayburn, he's an employee there at the mill. And he just kind of bearhugged me like that, just all the way around my body. He had my arms by the side and he squeezed, tried to break me in the back.

"Q. Let me interrupt you there. What caused him to do that? A. Just playing.

"Q. Did you say anything that would cause him to do it? A. Well, he said, 'I feel rough this morning. I believe I'll take you apart,' or something similar to that.

"Q. And he almost did that, didn't he? A. Yes, sir. I said, 'Oh, I like them tough'. Said, 'They put up a

better fight.' And I raised up and he just bear-hugged me and I just stiffened my back and I thought he was going to turn me loose, but he tripped me, and in falling I hurt that leg.

"Q. Has there ever been any trouble between you and Jack Rayburn at all? A. No, sir. Jack Rayburn and I are very good friends.

"Q. You all were really what is known ordinarily as prepping or horseplay? A. Yes, sir.

"Q. There was really no cause for it? A. No, sir.

"Q. Other than just playing? A. That's right."
Myatt then stated the amount of his wages and described his injury.

On cross-examination he said Rayburn was a trimmer at the mill. He repeated he, Myatt, was waiting for Mr. Seals to issue him a ticket for his load of lumber. Then the following examination took place:

"Q. And at that time Rufus Nelson, Jr., who is the same as Jack Rayburn, and you got to joking with each other? A. Yes, sir.

"Q. And then the prepping went on and the playing went on, and at some time during this process of prepping with each other and playing he got ahold of you in such a way that you twisted your leg? A. Yes, sir.

"Q. And because of that it was necessary for you to go to the hospital? A. Yes, sir.

"Q. You, of course, don't claim that you were doing anything for the company when you and he were playing, do you? You and he were not trying to help the company in playing. It just happened to happen on the job? A. Yes, sir.

"Q. But you were on the job when it did happen? A. Yes, sir.

"Q. And you were waiting for a ticket. What was he doing? A. He was waiting for . . .

"Q. (Interposing) The whistle to blow? A. No, sir, he was waiting for a lift truck to bring the lumber to the planer.

"Q. So each of you was just waiting for something to take place, and while both of you were waiting with nothing to do at the mill you started what negroes sometimes refer to as 'joreeing' or bickering back and forth with friendly words? A. Yes, sir.

"Q. And from that, and growing out of that joking between the two of you and the friendly words you got in a friendly tussle? A. Yes, sir.

"Q. And there was nothing except something friendly about it all? A. No, sir, not at all.

"Q. No ill feeling or anything like that? A. No, sir.

"Q. It was just one of those things that happened? A. That's right.

"Q. And something that you never did know of happening before, I'm sure, is that right? A. Yes, sir.

"Q. That is the first time you ever saw it happen around the mill there, wasn't it? A. Yes, sir.

"Q. And you know of nothing like that having happened since? A. No, sir.

"Q. That's all from this witness."

On further examination by the attorney-referee this witness said: "In fact, I never did have ahold of him. In fact, until after it happened, it happened so fast. He just walked up beside me and locked his arms around me and tried to squeeze me. Q. Tried to bear-hug you? A. Yes, sir. Tried to break my back."

The only other witness was Mr. Seal. He testified that both Myatt and Rayburn were employees of the mill; that Myatt was waiting for the witness to make out a lumber ticket and Rayburn was waiting for "some lumber to come in on a truck . . ." He said he did not see the "tussle", and was not able to say just what did happen. He said the two men were good friends.

The courts of other states of the union are sharply divided as to whether injuries resulting from horseplay are compensable.

Workmen's Compensation by Schneider, Vol. 6, Sec. 1609, pgs. 558-560, and Sec. 1616, pgs. 582-583; Larson's

Workmen's Compensation, Vol. 1, Sec. 23:00, page 342, and Sec. 23:65, pgs. 366-68; Anno. 159 A. L. R. 319-340; 58 Am. Jur. pg. 769, Sec. 268. Schneider says the present tendency is to allow such claims, especially where the claimant is not the aggressor. He makes this statement:

"Since a majority of the jurisdictions now award compensation to innocent or non-participating employees, and to employees whose participation is but momentary and not 'aggressive', a rule, under the broader conception of the law, may be said to be that injuries sustained by an employee while in the course of his employment as a result of another's horseplay, are compensable as arising out of and in the course of his employment."

This Court has not passed upon a purely horseplay case. In Mutual Implement & Hardware Ins. Co., et al. v. Pittman, 214 Miss. 823, 59 So. 2d 547, the difficulty started in horseplay and ended in a wilful, malicious assault of Pittman, the claimant, by Stewart, a fellow employee. However, we think the principles announced and accepted in that case as a foundation of liability are applicable here and entitle the claimant to compensation. The controlling opinion in the Pittman case summed up the grounds of the decision in that case in these words:

"Summarizing our holding, it is that the employment and nature of work brought Pittman and Stewart in close contact with each other, that one of the hazards of this contact was that of an assault committed by one employee upon another, that under our compensation law the injured employee is entitled to compensation for injury resulting from such a hazard the same as he would be if he had been injured by the machine in proximity to which he was required to work, and that the injury from this hazard arose out of and in the course of Pittman's employment."

Malicious assault caused by individual dislike of the victim is much more personal than horseplay, and if such assault is a risk assumed by the employer, certainly injury from horseplay is such an assumed risk.

It should be noted that the attorney-referee found from the quoted testimony that the claimant was not the aggressor in this case. We cannot say he was in error in that conclusion; therefore, the question of liability of an employer for injuries resulting to an employee from horseplay where claimant is the aggressor is not here decided.

The writer dissented in the Pittman case and is not in accord with the holding in the case at bar, but minority views are governed by majority holdings, and the decisions of the Court are binding upon the minority although the individual opinions of the minority may not be in accord with such decisions.

Affirmed.

*Hall, Lee, Holmes,* and *Arrington, JJ.,* concur.