JOHN HANCOCK TRUCKING Co., et al. *v.* WALKER

No. 42236 March 12, 1962 138 So. 2d 478

488

*Rae Bryant,* Gulfport, for appellants.

*Knox W. Walker,* Gulfport, for appellee, James E. Walker.

*Morse & Morse,* Gulfport, for appellees, Frank Edwards and Travelers Insurance Company.

ETHRIDGE, J.

We are concerned in this workmen's compensation case with two issues: Whether the claimant's injuries arose out of his employment, caused by the wilful act of a third party directed against him because of his employment; and whether for compensation purposes claimant was at the time the employee of his general employer, or a lent employee of a special employer. The Workmen's Compensation Commission held that James E. Walker, appellee, was the employee of appellant, John Hancock Trucking Company (called Hancock) and was covered by Hancock's insurance carrier, appellant Standard Accident Insurance Company; and his injuries arose out of and in the course of his employment. The circuit court affirmed.

 █ Walker, a Negro man, was employed by Hancock as a truck driver, and had been so working for at least several weeks before his injury. In the preceding week he drove a tractor and trailer for Hancock. His employer was in the business of leasing trucks, trailers, and drivers. Frank Edwards owned a gravel pit. On Monday, May 16, 1960, Hancock directed claimant, Walker, to go to the gravel pit and haul gravel for Edwards. Under an oral agreement Edwards paid Hancock for the lease of the gravel truck and driver on the basis of so much per yard of gravel hauled. Hancock paid Walker, for driving the truck, a weekly commission of twenty

per cent on the dollar. Hancock withheld social security and federal income tax from Walker's paycheck.

Pursuant to Hancock's instructions, Walker hauled gravel from Edwards' gravel pit on Monday, Tuesday and Wednesday, May 16-18. Edwards supervised generally the hauling from his gravel pit. On May 18, he had leased from others about thirty trucks and drivers. The only real supervision by Edwards over the truck drivers was in the actual loading of gravel on trucks. Edwards said that usually the drivers knew more about hauling than he did and did not need supervision; if a driver did not haul anything, he did not get paid; it was the driver's truck and he could go and come whenever he wanted to. He stated he did not have to tell the drivers anything, they knew what to do. They would back up near the dragline whose operator would then load the truck. After trucks were loaded, the drivers hauled gravel to a road project of the State Highway Department about fourteen miles away, and dumped the gravel at that place. The Highway Department supervised the unloading and gave the driver a ticket for the number of yards received. Edwards did not supervise unloading.

On Wednesday, May 18, Walker drove to the highway project with a load of gravel. He was in a line of trucks and ahead of Dumont Parker, a white man who owned and operated his own truck. Parker apparently became angered at claimant's place in line ahead of him, and told claimant he was not supposed to unload, to which claimant replied that he was. Parker "told me to leave and move my truck and I told him I wouldn't fall out about who unloaded first. I pulled up ahead so he could go first. Then he backed up and unloaded." Parker made no specific threat to Walker. Parker then left in his truck. Walker, having unloaded, followed him on the highway leading back to the gravel pit, but Parker turned off along the way. After arriving at the gravel

pit, Walker stopped in line behind another truck driver, preparatory to picking up another load of gravel, when Parker arrived in his truck, and, without saying anything, took a shotgun and shot Walker five or six times, seriously injuring him.

Miss. Code 1942, Rec., Sec. 6998-02(2) provides: " 'Injury' means accidental injury or accidental death arising out of and in the course of employment, and includes . . . *an injury caused by the wilful act of a third person directed against an employee because of his employment, while so employed and working on the job.*" (Emphasis added.)

The Commission found that claimant's injuries were caused by the wilful act of a third person, Parker, directed against claimant "because of his employment, while so employed and working on the job." The evidence supports that finding, which we consider in the light of the facts in evidence favorable to appellee and reasonable inferences from them. Parker became incensed that Walker should be ahead of him in line with his truck, with the right to dump his load first. The argument and Parker's anger began at the destination of the gravel haul, the highway project, and climaxed at the initial point of the job, the gravel pit. It was a conflict arising between men working on the same job and because of claimant's employment.

Clearly the injury arose in the course of Walker's employment. Parker owned his own truck and was hauling for Edwards, apparently on a contract basis. Hence he was not a co-employee with claimant. So Sec. 2(2) of the Act applies. It defines an injury as including one "caused by the wilful act of a third person directed against an employee because of his employment, while so employed and working on the job." Claimant was working on the job, and the Commission was warranted in finding that his injury was caused by the wilful act of Parker directed against claimant because of his em-

ployment. The subject matter of the dispute leading to the assault was an important element of the employment, namely, unloading of the trucks.

1 Larson, Workmen's Compensation Law, Sec. 11.12 summarizes the general rule: "Apart from any environmental risk, causal connection with the employment may be shown by connecting the subject matter of the dispute leading to the assault with the employment.

"A familiar illustration is that of the supervisor who is assaulted by a workman who he has fired or otherwise made to feel the weight of his authority.

"Similarly, it is universally agreed that if the assault grew out of an argument over the performance of the work, the possession of the tools or equipment used in the work, and the like, the assault is compensable."

■■ ■ In short, an assault is work-connected if it grows out of a quarrel whose subject matter is related to the work. Manifestly Parker became incensed at claimant because he was ahead of him in unloading the truck. This quarrel and its subject matter were related to the work which claimant was doing.

Although it involved an assault by a fellow employee, Mutual Implement and Hardware Insurance Co. v. Pittman, 214 Miss. 823, 59 So. 2d 547 (1952), is pertinent. After preliminary horseplay, Stewart, in a vicious assault, hit Pittman on the head with a shovel. The claim was compensable. The employment and nature of the work brought Pittman and Stewart in close contact with each other. One of the hazards of this contact was that of an assault committed by one employee upon another. It was said the question was similar to an injury by a machine in proximity to which an employee was required to work; and that the injury from this hazard of an assault by a fellow employee, which was connected with the job, arose out of and in the course of Pittman's employment.

Somewhat analogous is Miles v. Myatt, 215 Miss. 589, 61 So. 2d 390 (1952), where injuries from horseplay between two employees, resulting in the injury of one, was held to arise out of and in the course of the employment.

In Watson v. National Burial Assn., Inc., 234 Miss. 749, 107 So. 2d 739 (1958), Watson worked at a funeral home, and had the duty to use the employer's automobile to bring employees to work. While doing this, he was shot and killed by one of them. A presumption of work-connection was held to be applicable. The claim was compensable.

In Barry v. Sanders Co., 211 Miss. 656, 52 So. 2d 493 (1951), claimant was employed as a door-to-door salesman, using a truck belonging to his employer, in which he carried merchandise. After completion of the day's work, claimant returned to a motel and was in his room when he heard a noise outside. He checked the truck, but found nothing suspicious. He then went to a cafe for supper, and, upon returning to the motel, he locked the truck, and was proceeding to his room when he was attacked by two unknown persons, who took money from him. The Commission found that claimant's injuries were not received by and directed against him because of his employment, while so employed while working on the job. It's order was affirmed. The Court stated that it was a factual issue for the Commission as to whether appellant was assaulted because of his employment. *Barry* is distinguishable from the instant case, which involved an assault upon an employee by a third person; which was work-connected and stemmed from an argument about unloading the trucks; and in which we affirm the Commission. The evidence in *Barry* did not indicate any such work-connection.

Brookhaven Steam Laundry v. Watts, 214 Miss. 569, 626, 59 So. 2d 294 (1952), also held there was no con-

nection between deceased's employment and his injury, but that he was killed by a third person because of reasons personal to the latter, and not because of the employment. West Estate v. Southern Bell Tel. & Tel. Co., 228 Miss. 890, 90 So. 2d 1 (1956), denied a compensation claim where a telephone operator was killed by her jilted lover, for reasons purely personal and not connected with her work.

In the instant case, appellant contends that there is no testimony indicating that Parker's assault was directed against Walker because of his employment by Hancock. However, Hancock sent him to the gravel pit and the highway project in its truck as its employee. The controversy with Parker arose out of the method of performing that job, namely, the loading and the unloading of the truck. The Commission was warranted in finding that the injury was work-connected; that the subject matter of the dispute leading to the assault was connected with the conditions and manner of performance of the job. Although Parker and claimant were not co-employees, their positions with reference to this incident were more similar to that of co-employees than that of an employee and a third party. Hence the analogies in *Pittman* and *Myatt* are close and persuasive.

 █ The Commission correctly found that Walker was an employee of Hancock and not of Edwards. Hancock hired claimant, had the right to fire him, and to direct him what to do in the operation of its truck. Hancock paid his salary and deducted social security and income tax. Edwards leased the truck and driver, but in fact exercised little supervision over the actual loading of the truck. He exercised no supervision over its unloading. Runnels v. Burdine, 234 Miss. 272, 106 So. 2d 49 (1958), is distinguishable as to the nature of that action, in tort, and on its facts. Nor does the lent-servant doctrine apply to render claimant a special employee of Edwards. Rowell Equipment Co. v. Mc-

Mullan, 133 So. 2d 631 (Miss. 1961) is somewhat similar to the instant case. See also Clark v. Luther McGill, Inc., 240 Miss. 509, 127 So. 2d 858 (1961); No. 42,142, Index Drilling Co., Inc. v. Williams, decided February 2, 1962. There was no contract of hire, express or implied, with Edwards, and the presumption of continuance of the general employment was not rebutted. There was no clear demonstration that a new temporary employer had been substituted for Hancock.

Affirmed.

*Lee, P. J.,* and *Arrington, McElroy,* and *Rodgers, JJ.,* concur.