### Riva R. BROWN, Plaintiff,

v.

### KNIGHT–RIDDER, INC., Gulf Publishing Company, inc. d/b/a The Sun Herald, and Swetman Security Services, inc., Defendants.

### Civil Action No. 1:97-CV-16RG.

United States District Court,
S.D. Mississippi,
Southern Division.

Sept. 15, 1997.

Paul R. Bencomo, Helen H. Babin, Bencomo and Associates, New Orleans, LA, John Max Edwards, Jr., for Plaintiff.

Dean C. Colson, Enid Duany Mendoza, Joseph M. Matthews, Colson, Hicks, Edison, Colson, Matthews, Porter, Korvick and Mendoza, Miami, FL, Henry F. Laird, Jr., Laird & Goff, Gulfport, MS, for Defendants Knight–Ridder, Inc./Gulf Publishing Co., Inc.

Ben E. Sheely, Aultman, Tyner, McNeese & Rufin, Ltd., Gulfport, MS, for Defendant Sweetman Security Services, Inc.

## MEMORANDUM ORDER

RUSSELL, District Judge.

This matter is before the Court on a Motion, by Defendants Knight–Ridder, Inc. ("Knight–Ridder") and Gulf Publishing Company, Inc. ("The Sun Herald"), To Dismiss Or, In The Alternative, For Summary Judgment. The plaintiff correspondingly has asks that her response be considered a cross-motion for summary judgment to the contrary.

### Facts

There is very little dispute as to the facts which are material and dispositive to the subject motion. Briefly, these facts are as follows:

Defendant Knight–Ridder owns a chain of newspapers across the United States, including The Sun Herald, The Miami Herald and The Detroit Free Press.

Gulf Publishing, Inc. publishes The Sun Herald and is a wholly owned subsidiary of Knight–Ridder.

Knight–Ridder has established a program, called the Knight–Ridder Minority Scholarship Program, by which it awards scholarships to four outstanding minority high

school graduates each year. The monetary amount of the award is $5000.00 per year for four years and is conditioned upon the student (a) maintaining a "B" average, (b) interning each summer at a Knight–Ridder company, and (c), upon graduation, working at a Knight–Ridder company for at least one year.

In 1988, a Knight–Ridder minority scholarship was awarded to Ya–Sin Shabazz, a resident of Bay St. Louis, Mississippi, who attended Yale University.

In 1989, a scholarship was offered to the plaintiff, Riva R. Brown, a resident of Picayune, Mississippi, who attended the University of Southern Mississippi.

During the summers of 1989 and 1990, both Ms. Brown and Mr. Shabazz worked as interns at The Sun Herald; however, after their graduations in 1993 and 1992 respectively, she began working for The Sun Herald and he was placed with The Miami Herald.

Mr. Shabazz's employment with The Miami Herald ceased in the fall of 1993 and even though he and Ms. Brown had previously enjoyed a friendly platonic relationship, upon returning to the coast, he became hostile towards her. Shabazz even reportedly broke into the plaintiff's apartment prior to the shooting incident; leading her to report her concerns regarding him to her employer.

On July 18, 1994, at approximately 6:30 p.m., Ms. Brown exited The Sun Herald's Biloxi, Mississippi, office building and proceeded to the said employer's parking lot which is located adjacent to said office building. Upon entering the parking lot Ms. Brown observed Mr. Shabazz sitting in a car behind hers and, notwithstanding her expressed fear of him, she walked toward his car. He initially avoided her by maneuvering his car in the parking lot, whereupon she returned her to car for the purpose of leaving the premises. Shabazz continued maneuvering his car in such a way as to prohibit her from driving away. Subsequently he exited his car and approached hers; whereupon she lowered her window to inquire about his intentions. At this time, Mr. Shabazz produced a shot gun which he fired at

her; causing serious injuries to her arm and internal organs. She escaped further injury by exiting the car and running to The Sun Herald building where she received assistance from her co-workers. The incident occurred during daylight hours and at no time preceding the shooting did Ms. Brown attempt to alert security personnel of a possible problem.

Prior to the incident, Ms. Brown had been at work at The Sun Herald and had gone to the parking lot to get her automobile for the express purpose of leaving work and driving home. It is not disputed that she was off duty and was not engaged in any activity on behalf of Knight–Ridder or The Sun Herald.

Following her injury, the workers' compensation carrier for these moving defendants paid her the statutorily mandated amount in wages and paid her related medical bills. Additionally, the defendant, Sun Herald, on behalf of Knight–Ridder has paid to Ms. Brown the difference between what is allowed under the Mississippi Workers Compensation statutes and what she would have received as salary but for the incident. By her Supplemental Affidavit of September 2, 1997, the plaintiff asserts, in part, that "[a]t no time since July 18, 1994, [has] she ever made a claim for workers' compensation," and that "[f]or almost two years after the shooting, [she] continued to receive 100% of [her] pay." However, at no time has the plaintiff refused any benefits paid under workers' compensation. Neither has she offered to repay the approximately $120,000.00 in wages and medical benefits paid to her or on her behalf. Further, during oral arguments, the parties conceded that Ms. Brown continues to receive compensation for medical problems allegedly associated with the incident in question as well as her full salary. Ms. Brown is currently enrolled as a student at the University of Southern Mississippi in Hattiesburg, Mississippi.

### Discussion

Recognizing that its singular position is that of an unbiased interpreter of the law in light of the undisputed material facts, the Court pushes from its conscious thought the feeling that this case gives credence to the cynical admonition that "no good deed will go

unpunished." This is, after all, a simple matter of an individual who wishes to be made whole, insofar as money may obtain (or substitute for) such optimum desires. One need only read the plaintiff's article: *There is a purpose for my writing and for my life,* published in The Sun Herald and made Exhibit 5 to the movants' Rebuttal Memorandum, to conclude that she is a person possessed of high moral principle who strives to make the best of her opportunities.

## I. Summary Judgment versus Motion to Dismiss

During oral argument, counsel for the plaintiff and counsel for defendant Sun Herald engaged in some discussion as to whether this matter is subject to treatment as a Motion to Dismiss or for Summary Judgment. Seemingly the parties reconciled their differences; however, the Court wishes to make it clear that as the Court has considered all exhibits placed before it as well as those matters asserted during oral argument, the matter will be considered a Motion for Summary Judgment.

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In *St. Amant v. Benoit,* 806 F.2d 1294, 1296–97 (5th Cir.1987), the Fifth Circuit addressed the law as regards summary judgment and stated that "[t]he mere existence of a factual dispute does not by itself preclude the granting of summary judgment. '[T]he requirement is that there be no genuine issue of material fact.' *Anderson v. Liberty Lobby,* 477 U.S. [242], [248], [106 S.Ct. 2505, 91 L.Ed.2d 202] (1986) (emphasis in original)." (citations omitted).

The Fifth Circuit has addressed when an issue is genuine.

[A]n issue is genuine if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inferences in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of that party. If, on the other hand, the evidence offered by both the moving and opposing parties would support only one conclusion and, even if all the evidence to the contrary is fully credited, a trial court would be obliged to direct a verdict in favor of the moving party, the issue is not genuine.

*Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis,* 799 F.2d 218, 222 (5th Cir.1986) (footnotes omitted).

The United States Supreme Court further stated in *Liberty Lobby* that as to materiality, "[o]nly disputes over the facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby,* 477 U.S. at 248.

The Supreme Court has noted that the standard for summary judgment mirrors the standard for a directed verdict, the main difference between the two being when they are used, as the inquiry under each is the same. *See Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Barebones allegations are insufficient to withstand summary judgment because the opposing party 'must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'" *Howard v. Greenwood,* 783 F.2d 1311, 1315 (5th Cir.1986) (citing *Nicholas Acoustics & Specialty Co. v. H & M Construction Co., Inc.,* 695 F.2d 839, 845 (5th Cir.1983)).

## II. Was the Plaintiff entitled to receive worker's compensation benefits?

■ The liability of an employer for work related injuries is limited to the benefits provided for by Mississippi's Worker's Compensation Act, Miss.Code Ann. § 71–3–1, et seq. (1972) ("the Act"). Specifically, "[s]ection 71–3–9 of the Mississippi Code of 1972, provides that 'the liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee,....'" *Northern Electric Co. v. Phillips,* 660 So.2d 1278, 1281 (Miss.1995).

It is also worthy of note that employers, such as the defendants herein, are potentially

subject to penalties in the nature of punitive damages should they fail to honor a valid claim for worker's compensation benefits.

In addition, the Court notes that § 71–3–3 (Supp.1981) of the Act provides in pertinent part:

> "Injury" means accidental injury or accidental death arising out of and in the course of employment, and . . . includes an injury caused by the willful act of a third person directed against an employee because of his employment while so employed and working on the job.

As argued by the defendants, the Act assures that an injured employee will receive compensation without having to show fault or negligence on the part of the employer and without having to defend against allegations of comparative negligence. As relied upon, but somewhat imprecisely quoted in *Sawyer v. Head, Dependents of,* 510 So.2d 472, 477 (Miss.1987), the Court in *Doubleday v. Boyd Construction Co.,* 418 So.2d 823, 825–826 (Miss.1982) stated:

> In all states, workmen's compensation laws are in derogation of the common law in that they replace traditional negligence actions for a no-fault system of payment to employees and their families for job-related injuries. By the exchange, the remedy of workmen's compensation benefits, insofar as the right of the employee against certain classes of persons are concerned, is exclusive and the common law remedy is abrogated.

The worker's compensation laws of Mississippi, like those of other states, were crafted and enacted to limit, if not eliminate, the further insult to an injured employee caused by making him prove his entitlement to compensation in a court or similar forum. Such "no fault" legislation, becomes fiscally feasible by mandating that employers designated in § 71–3–5 of the Mississippi Code of 1972 participate by obtaining insurance to pay the awards and by limiting the compensation based upon the type and degree of injury. Additionally, the courts are called upon continuously to expand or restrict the reading of the statutes.

In *Big "2" Engine Rebuilders v. Freeman,* 379 So.2d 888 (Miss.1980), the Mississippi Supreme Court helpfully summarized:

> The singular purpose pervading the Workmen's Compensation Act is to promote the welfare of laborers within the state. Miss. Code Ann. § 71–3–1 (1972); *Nowlin v. Lee,* 203 So.2d 493 (Miss.1967). As remedial legislation to compensate and make whole, *McCluskey v. Thompson,* 363 So.2d 256 (Miss.1978), it should be construed fairly to further its humanitarian aims. *Speed Mechanical, Inc. v. Taylor,* 342 So.2d 317 (Miss.1977); *L.B. Priester & Son, Inc. v. Dependents of Bynum,* 244 Miss. 185, 197–98, 142 So.2d 30 (1962). Doubtful cases must be compensated. *Evans v. Continental Grain Co.,* 372 So.2d 265 (Miss.1979); *King v. Westinghouse Electric Corp.,* 229 Miss. 830, 92 So.2d 209 (1957); *Lindsey v. Ingalls Shipbuilding Corp.,* 219 Miss. 437, 68 So.2d 872 (1954); *National Surety Corp. v. Kemp,* 217 Miss. 537, 64 So.2d 723 (1953), *Deemer Lumber Co. v. Hamilton,* 211 Miss. 673, 52 So.2d 634 (1951); *see also* Dunn, Mississippi Workmen's Compensation §§ 31–32 (2d Ed.1967).

*Id.* at 889–890.

Consistent with the foregoing, Mississippi courts have crafted language and carved out niches, it would seem, to satisfy the aforementioned "humanitarian aims" and to award compensation in "doubtful cases." Of course, one must not lose sight of the line of cases in which the lack of causal connection has been determinative.

The defendants cite as primary authority *Wallace v. Copiah County Lumber Co.,* 223 Miss. 90, 77 So.2d 316, 318 (1955), *cert. denied,* 349 U.S. 966, 75 S.Ct. 901, 99 L.Ed. 1288 (1955), for the principle articulated in Larson's Worker's Compensation Law, Vol. 1, page 194:

> "As to employees having fixed hours and place of work, injuries occurring on the premises while they are going to and from work before and after working hours or at lunch time are compensable, but if the injury occurs off of the premises, it is not compensable, subject to several exceptions."

Defendants also emphasize an exception to the foregoing: "[W]here the injury results from a hazardous parking lot furnished by the employer." Id.

Plaintiff emphasizes that Mississippi courts generally have excluded from compensability those cases in which the injurious act was the result of a personal vendetta.

In *Williams v. Munford*, 683 F.2d 938, 939 (5th Cir.1982) the court of appeals summarized relevant Mississippi law as follows:

> Generally, Mississippi courts have interpreted [the language of § 71–3–3] broadly, finding coverage so long as three criteria are met: (1) the injury occurred within the time frame of employment; (2) the employee was within the spatial area required by employment at the time of injury; and (3) there existed a causal connection between the activity causing the injury and the interests of the employer.

*Id.* at 939.

At this juncture, the Court notes that, based upon the record as well as the written and oral argument of counsel, no genuine issue of material fact exists as to whether the incident and attendant injury occurred within the time frame of employment. Additionally, the same can be said regarding spacial area. The latter conclusion being supported by the evidence irrespective of whether Ms. Brown is considered a reporter for all purposes or whether her duties were limited to work done on the premises of The Sun Herald. The only issue which must be reconciled is whether there existed a causal connection between the shooting and conditions of employment.

Continuing, this Court notes, that the *Williams* Court analyzed several cases in its attempt to discern what type of scenario would constitute "an antecedent personal vendetta totally extraneous to the work environment." Regrettably, in one opinion: *Ellis v. Rose Oil Co.*, 190 So.2d 450 (Miss.1966), all that is related is that the decedent was killed by the husband of a woman with whom he was having an affair. In *West's Estate v. Southern Bell Telephone & Tel. Co.*, 228 Miss. 890, 90 So.2d 1 (1956), the employee was murdered by a jilted lover; with the only

connection between her employment and her cause of death being that she was on duty at the time of her death. Finally, in *Brookhaven Steam Laundry v. Watts*, 214 Miss. 569, 55 So.2d 381 (1951), *rev'd in part and aff'd in part on rehearing*, 214 Miss. 569, 59 So.2d 294 (1952), the "steamy" facts reveal that the employee was killed by the husband of a customer who discerned that the employee was doing more than picking up and delivering the laundry.

From the its research, the *Ellis* Court concluded:

> These cases are authority for the proposition that when an employee's death is caused by the willful act of a third person intending to injure him because of reasons personal to such third person and not because of the employee's employment, the death is not compensable.

*Id.* at 450.

As discussed in *Williams*, *Ellis* had to be modified in *Big "2" Engine Rebuilders*, to allow for compensation when a route salesman stopped to assist an apparently disabled motorist who in turn attacked him. *Big "2"*, a traveling salesman case in which no element of personal vendetta was involved, is instructive herein as it shows a willingness of the courts of Mississippi to expand the Act to find compensation when public policy and "humanitarian aims" so direct. *Williams*, on the other hand, is more instructive in that the court of appeals cited *Brookhaven Steam Laundry* for the principle that:

> [T]he test of recovery is not a causal relation between the nature of employment of the injured person and the accident. Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer. All that is required is that the "obligations or conditions" of employment create a "zone of special danger" out of which the injury arose.

55 So.2d at 392, (Emphasis supplied in *Williams*)

Additionally, the Williams court found that "[t]he general rule that emerges ... is that an employer's liability under the Act ... is determined by whether the injury arose as a

result of a risk created by employment conditions." That court further opined that "[a]bsent this special causal connection, no Mississippi court has ever found employer liability for compensation." *Id.*

The plaintiff further asserts that an analysis of whether or not the injury is subject to the personal vendetta exception to coverage, must include and emphasize the perspective of the assailant. That is: Was the injured employee picked at large or was she someone who was the intended target? This argument finds support in cases such as *Brookhaven Steam Laundry*, and *Ellis, supra;* however, in none of those cases does one find evidence that the employer had been informed of the danger; as was the case in *Williams* and which factor is present in the cause *sub judice.*

In its efforts to confirm or deny the existence of the aforementioned nexus, the Court must ask:

1. What part, if any, did the defendants' decision to award minority scholarships to the plaintiff and Shabazz and to thereby cause them to interact professionally, play in the incident?

2. Did the plaintiff's decision to inform the defendants of her concern about Shabazz suggest that The Sun Herald, in allowing him access to the premises, created or contributed to a "zone of danger" thereby making the incident more work related?

3. Does the developing case law in this area indicate a tendency of Mississippi courts to find coverage under these facts which would *Erie* bind this Court to act accordingly? Or,

4. On the contrary, do the facts of this case point to a finding that the incident was an act more akin to a "personal vendetta" not related to work; so as to preclude any reasonable finding of a work related "nexus?"

The foregoing questions and considerations must, it would seem, be looked at, not so much from the perspective of one who, having been afforded uncontroverted coverage and, thereafter, perceives the existence of a more lucrative tort action, but from the perspective of one seeking coverage of the Act.

Regarding the Court's analysis of the aforesaid questions, the Court places little, if any weight, on the fact that Ms. Brown and Mr. Shabazz began their relationship due to the otherwise good fortune which befell them due to the apparently eleemosynary policies of Knight–Ridder and its subsidiary the Sun Herald. Its primary focus has been and remains on the facts as they bear on questions 2, 3, and 4.

Ms. Brown was, as previously noted, employed as a reporter; a job which, while normally carried out during regular assigned hours, not uncommonly calls for the individual to respond to events that are newsworthy outside of the expected hours. Although the plaintiff emphasizes that on the day in question she had no expectation of outside reporting, nonetheless, the Court feels justified in asking what would have been her legal expectations had Shabazz attacked her as she covered a "breaking story" which she happened upon in route to her residence. Assuming, **arguendo**, that the alleged "vendetta" had no relation to the hypothetical story, the causal connection would have been broken and arguably no coverage would have existed. This is consistent with the finding of the courts that "a tort based upon a relationship created outside of the employment environment can be 'as easily committed at the place of employment as elsewhere' and cannot be fairly said to have come about as a result of conditions created by the employer." *Williams*, at 940. Contrast the foregoing hypothetical with the fact that Ms. Brown, while on the premises of her employer, was in a place which, by her own warnings, she clearly considered a "zone of danger" as to risk of harm from Shabazz. Ironically, but nonetheless in line with developing case law, had the Sun Herald not allowed Shabazz liberal access to the premises and had the plaintiff not informed the defendants' agents of her fear of Shabazz, the attack in the parking lot, or for that matter anywhere on the premises or off, would probably not have been compensable. However, based upon the totality of the facts and factors culminating in the attack, the subject incident would appear to be causally connected to her conditions of employment as in *Williams*. The comparison

to *Williams* is appropriate even though in that case the potential hazard was not specifically limited to the injured employee; who merely happened to be the employee on duty at the time that the store was robbed. And while it is arguably true that Shabazz could have shot the plaintiff at some other location, one cannot dismiss from consideration the significant probability that, based upon the knowledge of the particulars of her movement during working hours acquired because of his relationship with the employer, Shabazz was more assured of finding her in the subject parking lot than anywhere else.

As this Court has previously stated, the courts of Mississippi have sought, through the years, to find coverage in close questions so that the humanitarian aims of the Act would be realized. The facts herein present a "close question"; however, irrespective of the possibility that a different holding might net the plaintiff a greater recovery in a common law tort action, a finding of no coverage would be inconsistent with the developing law and traditional humanitarian aims of the Act. It is therefore the opinion and finding of this Court that the incident in question and resulting injuries to the plaintiff occurred within a "zone of danger" and "arose as a result of a risk created by employment conditions."

Finally, relying upon *Big "2" Engine Rebuilders, supra,* this Court notes:

> The statutory language "arising out of" and "in the course of" creates a requisite for compensability. Broadly, "arising out of" calls for some causal connection between the employment and the injury. However, the employment need not be the sole cause of injury; it is sufficient if it rationally contributes to it. *Prince v. Nicholson,* 229 Miss. 718, 91 So.2d 734 (1957). Reasonable relation of employment and injury may involve minimal causation, less than needed for liability in the field of Torts.

379 So.2d at 890. Relevantly, the majority in Big "2" concluded:

> [N]o Mississippi case **compels** a decision against compensation on this appeal. **It is**

at least a "doubtful case," and as such we affirm it in favor of compensation. *Id.* at 892 (Emphasis added).

### III. What is the relationship between the Sun Herald and Knight–Ridder?

■ For the purpose of the subject motions, the Court finds no relevant facts of record which would lead it to conclude that the these two entities should be treated separately for the purpose of these motions. Whether one concludes that they are principal and agent or duel employers, clearly, the acts of The Sun Herald, as a wholly owned subsidiary of Knight–Ridder, vis a vis the administration of the minority scholarship program and the employment of its recipient, Ms. Brown, were the acts of Knight–Ridder. Therefore, release of one is a release of the other.

### Conclusion

Based upon the law and facts considered and applied hereinabove, the Court finds that the defendants' Motion for Summary Judgment is well taken.

IT IS THEREFORE HEREBY ORDERED AND ADJUDGED that the Motion for Summary Judgment of defendants Sun Herald and Knight–Ridder is **GRANTED.**

IT IS ALSO ORDERED AND ADJUDGED that the cross-motion of the plaintiff, Riva R. Brown is **DENIED.**