813 So.2d 757 (2001)
Dionne HAWKINS, Appellant,
v.
TREASURE BAY HOTEL & CASINO and Insurance Company of the State of Pennsylvania, Appellees.
No. 2000-WC-01943-COA.
Court of Appeals of Mississippi.
November 13, 2001.
Rehearing Denied January 22, 2002.
Certiorari Denied April 11, 2002.
*758 Jack C. Pickett, Pascagoula, Attorney for Appellant.
William D. Blakeslee, Margaret E. Murdock, Gulfport, Attorneys for Appellees.
Before SOUTHWICK, P.J., LEE, and MYERS, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. Dionne Hawkins was denied benefits because the Workers' Compensation Commission found that her injuries did not arise from her employment. On appeal here she argues that when a co-worker assaulted her outside the apartment that the two women shared, she suffered a work-related injury. We disagree and affirm.

STATEMENT OF FACTS
¶ 2. Dionne Hawkins was employed by Treasure Bay Hotel & Casino as a "slot change" person. Shortly after being hired, Hawkins accepted an offer from Monique Smith, another employee of the same casino, to reside together at the Maison D'Orleans Apartments. Only a chainlink fence separated the apartments from the Mississippi Gulf Coast Coliseum parking lot, part of which Treasure Bay leased for use by its employees. Treasure Bay operated a shuttle from the parking lot to its casino complex one and one-half miles away. Treasure Bay also provided security in its portion of the parking lot. The Coliseum parking lot could be accessed from the Maison D'Orleans parking lot through an opening in the chainlink fence.
¶ 3. On September 24, 1994, Hawkins arrived at Treasure Bay shortly before her shift was to begin in order to attend a preshift employee meeting. At the conclusion of the meeting, Smith informed Hawkins that she was leaving in order to remove all of Hawkins' possessions from their apartment. Hawkins was granted permission by her supervisor to return to her apartment to secure her belongings. After exiting the Treasure Bay shuttle, Hawkins entered the apartment's parking lot through the opening in the chainlink fence. *759 Hawkins discovered that all her belongings had already been placed inside her car. While in the lot, Smith attacked Hawkins and stabbed her six or seven times with a knife. Hawkins required several surgeries and other expensive medical treatment.
¶ 4. Smith pled guilty in separate circuit court proceedings to aggravated assault.
¶ 5. Hawkins filed a petition to controvert before the Workers' Compensation Commission in January 1995. After a hearing in August 1999, the administrative judge found that Hawkins's injuries "did not arise out of or result from any risk to which [Hawkins] was exposed as a result of her employment with [Treasure Bay]." The judge also found that Hawkins had "deviated from her employment for a personal purpose unrelated to the employer's business at the time of the altercation which resulted in the stabbing and injury...."
¶ 6. After successive appeals by Hawkins, first the Commission and then the circuit court of Harrison County affirmed. Her next appeal has been deflected here from the Supreme Court.

DISCUSSION
¶ 7. When called upon to review an administrative agency's determination, we will affirm unless one of these defects in the decision exists: 1) it is not supported by substantial evidence; 2) it is arbitrary or capricious; 3) it is beyond the scope or power granted to the agency, or 4) it violates a party's constitutional rights. Sprouse v. Mississippi Employment Sec. Comm'n 639 So.2d 901, 902 (Miss.1994). This means that considerable discretion is given to the agency for fact-finding, discretion that we review with considerable deference.
¶ 8. The single issue for our review is whether the assault that Hawkins suffered was sufficiently connected with her employment to be compensable. By statute, a worker is entitled to compensation for injuries "arising out of and in the course of employment...." Miss.Code Ann. § 71-3-7 (Rev.2000). "Injury" includes both an accidental injury and an "injury caused by the willful act of a third person directed against an employee because of his employment while so employed and working on the job...." Miss. Code Ann. § 71-3-3(b) (Rev.2000). A "third person" may be "either a stranger to the employer-employee relationship or fellow employee acting outside the scope and course of his employment." Miller v. McRae's, 444 So.2d 368, 371 (Miss.1984). In the present case, the attacker Smith is a "third person" under Miller as her assault was outside the scope of her employment at Treasure Bay.
¶ 9. What these definitions leave as our issue is whether the assault was "because of [Hawkins's] employment while so employed and working on the job...." This Court has found that the focus in such a situation should be on whether the injury resulted from "a risk created by employment conditions." Green v. Glen Oaks Nursing Ctr., 722 So.2d 147, 149 (Miss.Ct. App.1998).
¶ 10. We divide the facts of the event into these relevant subparts:
a) the assault was by a coworker;
b) the assault occurred during work hours, apparently while Hawkins was on duty but had permission to leave to tend to this situation;
c) the assault occurred off company property; and
d) the substance of the argument leading to the assault did not involve the workplace.
¶ 11. We look at each consideration that we have just identified. First, there is no *760 controversy that both the assaulter and the victim were employees of the same casino.
¶ 12. Next, it is relevant whether Hawkins was injured during the time frame of her employment. Hawkins had signed in for her shift. Smith said that she was going to their apartment and remove all of Hawkins's personal property. Hawkins was given permission by her supervisor to return to her apartment. There is a dispute as to whether Hawkins requested that she be allowed to leave or whether her supervisor told her to do so after hearing about the confrontation between Hawkins and Smith. Hawkins did not sign out when she left Treasure Bay. However, Hawkins stated in her deposition, introduced as an exhibit during the administrative hearing, that returning to her apartment to check on her belongings had nothing to do with her employment or her employment duties.
¶ 13. The location of the actual assault is a consideration. Hawkins was neither on company property nor on the parking lot leased by the casino. Instead, the assault occurred in close proximity to the Treasure Bay parking lot but on the other side of a chain link fence at the parking lot of the apartment complex in which the women lived. The casino had no agreement of any sort with the Maison D'Orleans Apartments regarding their property.
¶ 14. The final and most contentious factual category is whether the argument that underlay the assault had an employment connection. Hawkins maintains that the causal connection arises simply because both women were Treasure Bay employees, met because of their work, and lived together at these apartments to simplify access to their jobs. As to the substance of the argument, Hawkins testified that Smith's reason for removing the personal belongings from the apartment was because "we had a friend over and we got into a little argument and [Smith] wanted to know why I was mad at her, and [I] told her I didn't want to talk to her about it at work." There was a problem at the apartment on the night before the assault concerning the baking of cookies. When asked by her attorney if the incident the previous night was the only incident that "contributed to [Smith's] hostility that day," Hawkins replied that she was unaware of any other reason.
¶ 15. Also introduced into evidence at the administrative hearing was a transcript of the sentencing hearing held on Smith's assault charge. Hawkins stated at the hearing that "I don't know the reason [Smith] stabbed me. I didn't do anything to Ms. Smith for her to stab me six times." When Smith was asked by the sentencing judge why she had stabbed Hawkins several times, Smith replied, "I wish I could tell you, but I can't. I can't. I have had arguments before that did not get out of hand like this. I don't know." Also introduced into evidence was Hawkins' deposition taken prior to the administrative hearing in which Hawkins stated that the argument between Smith and herself over taking another co-worker home occurred at their apartment after working hours.
¶ 16. These are the relevant facts. The legal framework also must be described. Hawkins must have been injured by a willful act directed against her because of her employment and "while so employed and working on the job." Miss. Code Ann. § 71-3-3(b).
[W]hen the assault is unconnected with the employment, or is for reasons personal to the assailant and the one assaulted, or is not because the relation of the employer and employee exists, and employment is not the cause, though it may be the occasion of the wrongful act, *761 and may give a convenient opportunity for its wrongful act, it is ordinarily held that the injury does not arise out of the employment.
Brookhaven Steam Laundry v. Watts, 214 Miss. 569, 626, 636, 59 So.2d 294, 300 (1952).[1] The court also stated that "the rational mind must be able to trace the resultant personal injury to a proximate cause set in motion by the employment and not by some other agency." Id. at 639, 59 So.2d at 301-02. Citing Watts and other precedents, the Supreme Court held that the "in the course of" requirement "is satisfied whenever the injury resulted from activity which is (1) in its overall contours actuated at least in part by a duty to serve the employer, or (2) reasonably incidental to the employment. Incidental activities have been held to include such personal pursuits as cleaning teeth, smoking and procuring tobacco, and going to the telephone." Big "2" Engine Rebuilders v. Freeman, 379 So.2d 888, 890 (Miss.1980).
¶ 17. If an intentional tort is committed as the result of a personal disagreement not arising from the workplace, there is no causal connection between the employment and the injuries "since such an act can as easily be committed in the workplace as anywhere else." Green, 722 So.2d at 149. Here, the act did not even occur at the workplace.
¶ 18. What was set in motion by the employment was for Hawkins and Smith to know each other. The disagreements between the two arose because of personal problems unconnected with any duties or events at work. No duties relevant or reasonably incidental to the employment were involved. This was an altercation between roommates, and insofar as the evidence revealed, their working for the same employer was unrelated to the dispute. The reasons given both by Hawkins and Smith were personal. Treasure Bay allowed Hawkins to leave her job temporarily to address the problems, but this personal mission was an accommodation by her employer, not an assignment.
¶ 19. The administrative judge and Commission found, based on the evidence presented, that the assault did not arise out of or in the course of Hawkins' employment with Treasure Bay. We agree.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THE APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER and BRANTLEY, JJ., CONCUR.
NOTES
[1] A quote from the first opinion in Watts has been used by two federal courts and also by this Court: "the test of recovery is not a causal relation between the nature of the employment of the injured person and the accident. Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to the employer. All that is required is that the `obligations or conditions' of employment create a `special zone of danger' out of which the injury arose." Brookhaven Steam Laundry v. Watts, 214 Miss. 569, 601-02, 55 So.2d 381, 392 (Miss.1951), quoted in Williams v. Munford, 683 F.2d 938, 939 (5th Cir.1982); Brown v. Knight-Ridder, Inc., 1 F.Supp.2d 622, 626 (S.D.Miss.1997); Green v. Glen Oaks Nursing Center, 722 So.2d 147, 150 (Miss.Ct.App.1998). However, after a suggestion of error, the Watts court withdrew its original opinion in which the quoted language is found. A new opinion reversing the original was then released. Brookhaven, 214 Miss. at 626, 627, 59 So.2d 294, 296 (1952).