# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-WC-01261-COA

**JONATHAN HOLLIS**                                                          **APPELLANT**

**v.**

**ACOUSTICS, INC. AND ASSOCIATED**                                   **APPELLEES**
**GENERAL CONTRACTORS OF MS, INC.**

DATE OF JUDGMENT:                  10/05/2021
TRIBUNAL FROM WHICH              MISSISSIPPI WORKERS' COMPENSATION
APPEALED:                                  COMMISSION
ATTORNEY FOR APPELLANT:         MARSHALL JACKSON GOFF
ATTORNEY FOR APPELLEES:          CATHERINE BRYANT BELL
NATURE OF THE CASE:                 CIVIL - WORKERS' COMPENSATION
DISPOSITION:                              AFFIRMED - 09/27/2022
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE CARLTON, P.J., WESTBROOKS AND SMITH, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1.     Jonathan Hollis was injured during an altercation on a job site and sought workers'

compensation benefits.  The administrative judge found that Hollis was not injured in an

incident arising out of and in the course of his employment—a requirement for

compensability. The Mississippi Workers' Compensation Commission agreed.  Hollis

appeals, arguing that he sustained a compensable injury.  We find the Commission's order

is supported by substantial evidence and therefore affirm.

## FACTS

¶2.     On September 7, 2019, Hollis was employed by Acoustics Inc. as an acoustical grid

installer, working on grid installation at the Coahoma County jail.  Employees from other

companies, who were painting, installing plumbing, and performing other tasks, were also at the job site. One company with employees at the jail was Hi-Tek, a sprinkler installation company. Hi-Tek employees Matthew Chandler Blanks and Conner Self (a Hi-Tek supervisor) were on site that day and had chosen to play Christian rap music on a phone while they worked.

¶3. Hollis testified that as he worked that morning, he heard loud music playing two rooms down from the room in which he was working. He stated that he initially did not say anything to Self or Blanks about the music but instead took his morning break to avoid it. On the way out to take his break, Hollis informed Benchmark Construction superintendent Beau Flemming about the music.[1] Hollis testified that there was a policy that there should be no music at the jobsite, but Flemming stated the policy was that if anyone finds the music playing in a shared work area offensive, it must be turned off. Hollis said he asked Flemming not to say anything to Self or Blanks about the music because he did not want to cause trouble.

¶4. Self, on the other hand, testified that Hollis stopped by the room he and Blanks were working in that morning (before his break) and made several racial slurs about the rap music. Self testified that after the encounter, he turned the music off. He said that Flemming came by a short time later to tell him to turn off the music, and Self told Flemming the music was already off.

¶5. Hollis testified that after he returned from his break, Blanks moved into the same

---

[1] Both Acoustics Inc. and Hi-Tek were subcontractors for Benchmark.

room that he was working in and had moved his work materials and tools to the middle of the room in order to continue their sprinkler installation. At this time Hollis and Blanks were the only people present in the room, so there were no additional witnesses to the impending altercation. Hollis stated that Blanks was on top of a ten-foot ladder and called down to Hollis with an apology for moving his tools. Hollis testified that he then told Blanks it was ok that the tools were moved and said he then apologized to Blanks for Flemming speaking to him earlier about playing music. According to Hollis, Blanks began to curse him and deride him for listening to country music. Hollis said that Blanks came down the ladder and "got right up in my face," so Hollis pushed him. He testified that when he pushed Blanks, Blanks had not yet touched him. He stated that next Blanks put him in a chokehold and kicked his knee out from under him, which caused him to fall. Hollis' right knee hit the floor. Hollis testified that because he felt he was about to pass out from the chokehold, he grabbed a hammer drill on the floor and tried to hit Blanks with it. According to Hollis, the fight ended when Blanks let go of him and left the room.

¶6. Blanks' testimony differs from Hollis' testimony in many respects. Blanks agrees that upon returning from his break, Hollis told him it was fine that he had moved Hollis' tools. However, according to Blanks, after Hollis said that moving the tools was fine, he proceeded to use racial slurs to ask Blanks "why we listen to that 'N' word stuff" and not country music. Blanks explained that he did not like country music and made a dig at Hollis about the genre. Blanks testified that Hollis got angry, grabbed the ten-foot ladder Blanks was working on, and said to Blanks, "I bet you won't come off the ladder and say that . . . ." Blanks said he

3

descended the ladder and repeated his insult regarding country music. Hollis then shoved him, and the altercation commenced.

¶7. Blanks testified that both parties were yelling, but he had not threatened or initiated physical contact with Hollis before Hollis shoved him. Blanks denies putting Hollis in a chokehold but confirms that Hollis grabbed a hammer drill to hit him. According to Blanks, Hollis struck him in the face with the hammer drill and tried to drill his stomach. Blanks said that he wrested the hammer drill from Hollis and left the room to find Self before reporting the altercation to Flemming. Both Hollis and Blanks agree that they did not know each other outside of work and only met on the day of the altercation.

¶8. Self's deposition testimony confirmed that Blanks had a strike mark on his face, he was holding a hammer drill, and Blanks told him Hollis had tried to stab him with it. Self also recalled Blanks telling him that he had put Hollis in a headlock. Self said Blanks had told him that the altercation was about the music.

¶9. In his deposition, Flemming did not recall seeing bruises on either party's face. Flemming opined that the music and the tool movement were the cause of the altercation. Although Flemming speculated that the tool movement played a part in the altercation, Hollis, Blanks, and Self all agreed that the altercation was over the music. Again, neither Self nor Flemming actually witnessed the altercation.

¶10. Hollis testified that after the fight, his leg "[gave] way on me," and he could not walk. He required surgery and would be unable to work for five months. The injury resulted in a work restriction that significantly impacted his efficiency in installing acoustic grids in the

4

future. Hollis had surgery in November 2019 to repair a complete tear of the medial collateral ligament, a rupture of the anterior cruciate ligament, and a rupture of the medial collateral ligament of his right knee. He was released from the doctor's care in May 2020.

**PROCEDURAL HISTORY**

¶11. In April 2020, Hollis filed a petition to controvert with the Mississippi Workers' Compensation Commission. The employer and carrier, Associated General Contractors of Mississippi Inc., filed an answer denying that the injuries were compensable. A compensability hearing was held in December 2020, where the parties stipulated that the sole issue was whether Hollis had suffered a compensable work-related injury. In May 2021, Administrative Judge Tammy Harthcock issued an order finding that Hollis' work injury was not related to his employment because the dispute "was solely over the music. . . . [A]s such both Hollis and Blanks were deviating from their work duties. Therefore, the incident cannot be said to have arisen out of and in the course of employment, which is required for compensability." In June 2021, Hollis appealed the order to the full Commission. The Commission affirmed the order, although it specifically pointed out that the administrative judge's determination that Hollis was the aggressor was irrelevant because of the no-fault system of workers' compensation. However, the full Commission went on to state, "The Claimant in this matter willfully engaged in conduct intended to injure himself or another when he abandoned his employment to participate in [a] physical altercation. These actions are expressly exempt from recovery under the Act."

¶12. Commissioner Mark Henry dissented, expressing his concern that this reading of the

5

statute could bar workers' compensation claims for employees who were defending themselves from another's assault. He also believed because there was a policy regarding music on the worksite supported the conclusion that the argument "stemmed from a connection to the Claimant's employment . . . [, and because of this he] would find that the Claimant sustained a compensable work-related injury[.]" In November 2021, Hollis appealed from the Commission's order.

## STANDARD OF REVIEW

¶13. "This Court's review of decisions of the Workers' Compensation Commission is limited by the familiar substantial evidence standard." *Sanderson Farms Inc. v. Jackson*, 911 So. 2d 985, 988 (¶7) (Miss. Ct. App. 2005) (citing *Nettles v. Gulf City Fisheries Inc.*, 629 So. 2d 554, 557 (Miss. 1993)). Applying this standard, we will reverse a decision of the Commission if the decision was not supported by substantial evidence and was arbitrary and capricious. *Id.* (citing *Weatherspoon v. Croft Metals Inc.*, 853 So. 2d 776, 778 (¶6) (Miss. 2003)). "[C]onsiderable discretion is given to the agency for fact-finding, discretion that we review with considerable deference." *Hawkins v. Treasure Bay Hotel & Casino*, 813 So. 2d 757, 759 (¶7) (Miss. Ct. App. 2001). Whether an appellant is assaulted because of his employment is a factual issue for the Commission to determine. *John Hancock Trucking Co. v. Walker*, 243 Miss. 487, 495, 138 So. 2d 478, 480 (1962). "Absent an error of law, we must affirm the Commission's decision if there is substantial evidence to support [it]." *Forrest Gen. Hosp. v. Humphrey*, 136 So. 3d 468, 471 (¶14) (Miss. Ct. App. 2014).

## ANALYSIS

¶14. Hollis' sole issue on appeal is whether he sustained a compensable injury. Hollis argues that the injuries he sustained resulted from compensable workplace violence since the argument over music and the movement of his tools was intertwined with Hollis' construction work that day. We disagree and affirm the Commission's decision, as it is supported by substantial credible evidence and is not arbitrary or capricious.

¶15. An employee is entitled to worker's compensation benefits upon "disability or death of an employee from injury . . . arising out of and in the course of employment, without regard to fault as to the cause of the injury." Miss. Code Ann. § 71-3-7(1) (Rev. 2021). However, if the claimant willfully engaged in conduct intended to injure himself or another, his actions are expressly exempt from recovery under our workers' compensation laws. *See id*. § 71-3-7(4).

¶16. "'Injury' means accidental injury or accidental death arising out of and in the course of employment without regard to fault which results from an untoward event or events, if contributed to or aggravated or accelerated by the employment in a significant manner." *Id*. § 71-3-3(b). The definition includes an "injury caused by the willful act of a third person directed against an employee because of his employment while so employed and working on the job." *Id*.

¶17. "One is injured 'in the course of employment' when an injury results from activity 'actuated partly by a duty to serve the employer or reasonably incident to the employment.'" *Mathis v. Jackson Cnty. Bd. of Supervisors*, 916 So. 2d 564, 571 (¶23) (Miss. Ct. App. 2005) (quoting *Singley v. Smith*, 844 So. 2d 448, 453 (¶20) (Miss. 2003)). Furthermore, our

Supreme Court has established the general proposition that "an injury arises out of an employment when but only when there is a causal connection between such injury and the conditions under which the work is required to be performed." *Est. of Brown ex rel. Brown v. Pearl River Valley Opportunity Inc.*, 627 So. 2d 308, 311 (Miss. 1993) (citing *Persons v. Stokes*, 222 Miss. 479, 485, 76 So. 2d 517 (1954); *Brookhaven Steam Laundry v. Watts*, 214 Miss. 569, 59 So. 2d 294 (1951)). When analyzing whether an injury arises out of employment, "[i]t is not sufficient that the employee is at the place of his employment at the time of the accident and doing his usual work." *Id*. Rather, "in order for an injury to be compensable under workmen's compensation acts it is necessary that the injury result from some risk to which the employment of the claimant exposes him." *Id.*

¶18.    "If an intentional tort is committed as the result of a personal disagreement not arising from the workplace, there is no causal connection between the employment and the injuries 'since such an act can as easily be committed in the workplace as anywhere else.'" *Sanderson Farms Inc.*, 911 So. 2d at 990 (¶12) (quoting *Hawkins,* 813 So. 2d at 761 (¶17)). Our Supreme Court provided the following analysis regarding whether assaults arise out of employment:

> [W]hen the assault is unconnected with the employment, or is for reasons personal to the assailant and the one assaulted, or is not because the relation of the employer and employee exists, and the employment is not the cause, though it may be the occasion of the wrongful act, and may give a convenient opportunity for its execution, it is ordinarily held that the injury does not arise out of the employment.

*Brookhaven Steam Laundry*, 214 Miss. at 636, 59 So. 2d at 300 (quoting 58 Am. Jur., Workmen's Compensation, at 765, para. 265). This holding means that "third party assaults

8

that occur due to a purely personal vendetta or disagreement do not arise out of the employment." *Sanderson Farms Inc.*, 911 So. 2d at 989-90 (¶12) (citing *Big "2" Engine Rebuilders v. Freeman*, 379 So. 2d 888, 891 (Miss. 1980)).

¶19.    Furthermore, our workers' compensation statutes specifically provide that "if the injury or death has been caused by the willful act of a third person, it must be shown that such willful act was directed against the employee 'because of his employment, while so employed and working on the job.'" *Dewberry v. Carter*, 218 So. 2d 27, 29 (Miss. 1969) (quoting *Brookhaven Steam Laundry*, 214 Miss. at 633-34, 59 So. 2d at 299); *see* Miss. Code Ann. § 71-3-3(b).  As such, the subject matter of the dispute is essential to the analysis.  *John Hancock Trucking Co.*, 243 Miss. at 494, 138 So. 2d at 480.  In *John Hancock Trucking Co.*, the Supreme Court gave a few illustrations regarding what subject matter may be considered to have a causal connection with employment:

> A familiar illustration is that of the supervisor who is assaulted by a workman whom he has fired or otherwise made to feel the weight of his authority. . . . Similarly, it is universally agreed that if the assault grew out of an argument over the performance of the work, the possession of the tools or equipment used in the work, and the like, the assault is compensable. . . . In short, an assault is work-connected if it grows out of a quarrel whose subject matter is related to the work.

*Id*. (quoting 1 Arthur Larson, Workmen's Compensation Law § 11.12 (1952)).  In *John Hancock Trucking Co.*, the injury to the plaintiff was deemed compensable because the subject matter of the quarrel was related to the order in which the parties performed their jobs, meaning the argument "arose out of and in the course of [the plaintiffs'] employment." *Id*.

9

¶20. In the present case, nothing in the record shows that Hollis' employment was a contributing cause to his injury. He did not become involved in the quarrel with Blanks because of the performance of his job, the order in which the work was performed, or the possession of certain tools. The altercation was not even over what music would be played while working. Blanks, Self, and Hollis all agreed that the dispute was over musical genre preference (Christian rap versus country music), and all testimony supports that the music had been turned off; no music was playing at the time the altercation ensued. A quarrel regarding musical genre preference is not subject matter that is considered related to work, and thus is not compensable. In the present case, the employment was the "occasion[,]" not "the cause" of the dispute—which our Supreme Court has held is not enough to be considered compensable. *Brookhaven Steam Laundry*, 214 Miss. at 636, 59 So. 2d at 300.

¶21. Additionally, the Commission found that Hollis "willfully engaged in conduct intended to injure himself or another when he abandoned his employment to participate in physical altercation." This, too, bars Hollis from recovery under the law. *See* Miss. Code Ann. § 71-3-7(4). Commissioner Henry's dissent concern was that this statutory language may be used to deny benefits to people who act in self-defense after being accosted while at their place of employment. However, someone acting in self-defense does not "willfully engage in conduct intended to injure . . . another"; the person instead is forced to protect himself against bodily harm. *See Self-defense*, Black's Law Dictionary (11th ed. 2019) (defining self-defense as "[t]he use of force to protect oneself . . . from a real or threatened attack"). Given this difference, it seems unlikely the Commission would use this statutory

10

language to deny compensation benefits to victims of assault at a job site who have not willfully abandoned their employment to engage in an altercation. *See, e.g.*, *Mutual Implement & Hardware Ins. Co. v. Pittman*, 214 Miss. 823, 839, 59 So. 2d 547, 553 (1952).

## CONCLUSION

¶22. In sum, the administrative judge and the Commission found that based on the evidence presented, Hollis did not sustain a compensable injury that arose out of or in the course of his employment with Acoustics Inc. Here, testimony showed that Hollis was not acting in self-defense. He admitted he willfully shoved Blanks in a way that was not necessary to protect himself. This absence of self-defense directly counters Commissioner Henry's dissent. The record also did not show that the subject matter of the quarrel had a causal connection with the employment. The Commission's determination is based on substantial credible evidence and is not arbitrary or capricious; therefore, we affirm the Commission's order.

¶23. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**