Erica Willis TANKS, as Administrator of the Estate of Thomas Willis, as Personal Representative of Thomas Willis, for the Benefit of all Heirs of Thomas Willis, and as Natural Daughter of Thomas Willis Plaintiffs

v.

LOCKHEED–MARTIN CORPORATION, D/B/A Lockheed Martin Aeronautics Company, and Derik Scott Williams, as Executor of the Estate of Douglas Paul Williams Defendants

No. CIV.A. 403CV408LN.

United States District Court, S.D. Mississippi, Eastern Division.

Aug. 13, 2004.

William F. Blair, Troy Farrell Odom, Blair & Bondurant, P.A., Jackson, MS, for Plaintiffs.

David L. Ayers, Mark D. Jicka, J. Collins Wohner, Jr., Watkins & Eager, Jackson, F. Gregory Malta, Malta & Parrish, PLLP, Meridian, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant Lockheed–Martin Corporation d/b/a Lockheed Martin Aeronautics Company for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Erica Willis Tanks, as administrator of the Estate of Thomas Willis, has responded in opposition to the motion and the court, having considered the memoranda of authorities submitted by the parties, concludes that defendant's motion must be denied.

This case arises out of a tragic incident that occurred at the Lockheed–Martin facility in Meridian, Mississippi on July 8, 2003 when Douglas Paul Williams, a longtime employee of Lockheed–Martin, went on a shooting rampage at the Lockheed plant in Lauderdale County, Mississippi, which resulted in the deaths of seven of Williams' co-workers, including Thomas Willis. According to the allegations of plaintiff's complaint, on that date, Williams, who was known to harbor extreme racial hatred toward his African–American co-workers, arrived at the plant with five firearms in his truck, including a 12–gauge shotgun and a Mini–14 semiautomatic rifle. While attending a mandatory training course being held in a building on plant grounds, Williams exited the building shortly after the training sessions began, retrieved the shotgun and Mini–14 semiautomatic rifle, and then reentered the building where the training course was being held and opened fire, shooting at least five persons. He then left that building and entered the main plant building, where he

shot the remaining victims, including Willis, following which he took his own life with a self-inflicted gunshot wound.

Plaintiff, Willis's daughter and the administrator of his estate, filed this wrongful death action against Lockheed–Martin and against Williams' estate. Count two of plaintiff's complaint is against Williams' estate for assault and battery, and the remaining two counts are against Lockheed–Martin, the first being a claim for "intentional and negligent acts of Lockheed" based on plaintiff's allegation that Lockheed–Martin, which had actual and constructive notice and knowledge of Williams' violent nature and his hatred of blacks, "intentionally failed to provide a reasonably safe work environment" for its employees by protecting them from Williams' violent acts. For this alleged breach, plaintiff demands recovery of compensatory damages of $5,000,000 for lost income, pain, suffering, emotional distress, funeral expenses, loss of companionship and loss of value of life. Another count charge that Lockheed–Martin's "deliberate, intentional, and reckless acts and omissions contributed to Williams' mental and emotional collapse" which led directly to Willis's wrongful death, entitling plaintiff to damages, and in her final count, plaintiff seeks an award of punitive damages based on Lockheed–Martin's alleged "intentional," "grossly negligent" and "willful disregard" for the safety of workers at the plant, including, in particular, Thomas Willis.[1]

Lockheed–Martin has moved for summary judgment based on the exclusive remedy provision of Mississippi's Workers'

Compensation Act, Mississippi Code Ann. § 71–3–9, which bars civil claims against employers for injuries for which benefits are payable under the Act, providing as follows:

> The liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next-of-kin, and anyone otherwise entitled to recover damages at common law or otherwise from such employer on account of such injury or death . . . .

Lockheed–Martin contends that since it complied with its duty under the Act by insuring its liability for the payment of workers' compensation benefits,[2] and since the injury at issue in this case is clearly covered by the Act, then it is entitled to summary judgment based on the exclusivity bar. Plaintiff, however, denies that the injury at issue is compensable under the Act and submits that she is therefore free to pursue her claims in this cause. For the reasons that follow, the court must agree with plaintiff.

■ As is pertinent here, Section 71–3–3(b) of the Workers' Compensation Act defines "injury" as

> accidental injury or accidental death arising out of and in the course of employment, and . . . includes an injury caused by the willful act of a third person directed against an employee because of his employment while so employed and working on the job . . . .

The question presented, or at least the first question presented, is whether the

---

1. Plaintiff's original complaint was couched in terms of negligence and gross negligence. Plaintiff, upon being granted leave to amend her complaint, filed her amended complaint with the additional allegations of "intentional" misconduct by Lockheed–Martin.

2. *See Taylor v. Crosby Forest Prods. Co.,* 198 So.2d 809, 811 (Miss.1967) ("The requirement that the employer must secure payment of compensation means that he must have in effect an insurance policy complying with the workmen's compensation act, or must qualify as a self insurer.").

fact that Thomas Willis's death was caused by the intentional act of his co-worker permits plaintiff to seek recovery in tort for his death or whether, instead, the exclusivity bar applies.

In support of its assertion that the exclusivity bar applies, defendant relies on a number of cases, beginning with *Mutual Implement & Hardware Insurance Co. v. Pittman*, 214 Miss. 823, 59 So.2d 547 (1952), in which the Mississippi Supreme Court held that an employee's injuries resulting from a willful assault and battery by a co-worker were covered by the Workers' Compensation Act. *Pittman*, which was decided just three years after Mississippi adopted its Workers' Compensation Act,[3] gave the court its first opportunity to consider whether injuries so caused were covered by the Act and placed the court in the position of choosing between following "those authorities which give the compensation act a strict and narrow construction or those that give to it a broad and liberal construction." *Id.* at 828, 59 So.2d at 548. The court, acknowledging the beneficial purpose of the Act, chose the latter,[4] and held that the Act covered the injuries of the claimant, Pittman, which resulted when on-the-job "horseplay" started by another employee, Stewart, turned violent and ended with Stewart's hitting Pittman on the back of the head with the shovel Stewart had been working with. The court held that a workplace assault, whether by fellow employees or strangers to the work and regardless of the immediate occasion for the dispute, i.e., even if the assault arose from personal conflict or animosity or from the violent personality of the assailant, "arises out of and in the course of employment,"[5] and held that Pittman's injuries were thus covered by the Act. In support of its conclusion, the court reasoned as follows:

> [T]hat the employment and nature of the work brought Pittman and Stewart in close contact with each other, that one of the hazards of this contact was that of an assault committed by one employee upon another, that under our compensation law the injured employee is entitled to compensation for injury resulting from such a hazard the same as he

3. In 1949, Mississippi became the last state to adopt a system of Workmen's Compensation.

4. The court approvingly quoted at length passages from cases of other jurisdictions, including the following:

 'The purpose of the Compensation Act was to benefit certain workmen otherwise without legal recovery. ...The law has been and should be construed fairly, indeed liberally, in favor of the employee. Against its justness or economic soundness nothing can be said. It may seem harsh and arbitrary to impose liability upon a master for an assault committed by a workman upon a coworkman, but the purpose and intent of the statute is to fix an arbitrary liability in the greater public interest involved. This legislation was to ameliorate a social condition-not to define a situation or fix a liability by an adherence to the old common law. Liability was imposed regardless of fault-vitally different from that under the common law. Injury by an employe moved by

some cause aside from his regular duties, may be considered an inevitable, however undesirable, result-a risk which is incident to employment of many persons. It is a burden which industry may well bear under this legislation. The claimant is entitled to the benefit of the act.'
 *Mutual Implement & Hardware Ins. Co. v. Pittman*, 214 Miss. 823, 837, 59 So.2d 547, 553 (Miss.1952) (quoting *Verschleiser v. Joseph Stern & Son, Inc.*, 229 N.Y. 192, 128 N.E. 126, 127).
 Id. at 840, 128 N.E. 126, 59 So.2d at 554 (citations omitted).

5. The Workers' Compensation Act provided then, as it does now, that " '[i]njury' means accidental injury or accidental death arising out of and in the course of employment ... and also includes an injury caused by the wilful act of a third person directed against an employee because of his employment, while so employed and working on the job.' " *Pittman*, 214 Miss. at 846, 59 So.2d at 557.

would be if he had been injured by the machine in proximity to which he was required to work, and that the injury from this hazard arose out of and in the course of Pittman's employment. *Id.* at 844–45, 59 So.2d at 556.[6] *See also Joe N. Miles & Sons v. Myatt,* 215 Miss. 589, 61 So.2d 390 (1952) (in case involving horseplay between employees, the court, citing *Pittman,* observed that "[m]alicious assault caused by individual dislike of the victim is much more personal than horseplay, and if such assault is a risk assumed by the employer, then certainly injury from horseplay is such an assumed risk").

Subsequent to *Pittman,* the court held in *Watson v. National Burial Association, Inc.,* 234 Miss. 749, 107 So.2d 739 (1958), that benefits were recoverable under the Act for the shooting death of an employee, Watson, by another employee, Johnson. The proof showed that Watson had gotten a call at work from Johnson, and went to pick him up or to see him, and was shot by Johnson while en route back to the workplace. Although "it was not shown what caused Johnson to shoot and kill Watson," the court found the rule to be that where an employee is found dead at a place where his duties required him to be, then in the absence of proof that he was not engaged in his employer's business, "there is a presumption that the accident arose out of and in the course of the employment within the meaning of the compensation acts." *Id.* (citations omitted). Accordingly, because the death, which the court implicitly viewed as "accidental," arose in the course of employment, it was covered by the Act.

The issue of whether an on-the-job shooting death of an employee was covered by the Workers' Compensation Act again arose in *Kerr–McGee Corporation v. Hut-*

---

**6.** The court elaborated on this notion by quoting from a number of cases that had viewed the occurrence of workplace assaults as simply a risk of doing business. For example, in *Chambers v. Union Oil Company,* 199 N.C. 28, 153 S.E. 594, 595, quoted in *Pittman,* the court wrote,

> The Workmen's Compensation Act 'itself contemplates that successful industrial operation presumes the assembling of workers in one place who are engaged in various phases of the general prosecution of the business. It is a self-evident fact that men required to work in daily and intimate contact with other men are subjected to certain hazards by reason of the very contact itself because all men are not alike. Some are playful and full of fun; others are serious and diffident. Some are careless and reckless; others are painstaking and cautious. The assembling of such various types of mind and skill into one place must of necessity create and produce certain risks and hazards by virtue of the very employment itself. * * * The bulk of normal American workmen possess a stratum or residuum of vivacity and good nature which frequently manifests itself in joking and harmless pranks. These things are not unnatural, but natural, and the ordinary outcropping of industrial contact between men of all classes and types. Such risks, therefore, are incident to the business and grow out of it. In an ordinary suit for damages for personal injury, the workman assumes the ordinary risks of the business, but the Compensation Act in such case imposes the ordinary risk of the business upon the employer; that is to say, the employer and not the workman must assume the ordinary risks of the business or employment.' *Chambers v. Union Oil Company,* 199 N.C. 28, 153 S.E. 594, 595. To the above stated contrasts in human nature we may add that some men are quarrelsome, contentious, bellicose and inclined to fight, while others are peaceful and not easily provoked to anger, and the very contact between employees who are required to work together subjects them to the hazards resulting from the pugnacious dispositions of their fellow employees in the same manner and to the same extent that they are exposed to the hazards of machines about which they are required to work.

*Pittman,* 214 Miss. at 830–31, 59 So.2d at 549–50.

*to,* 401 So.2d 1277 (Miss.1981), in which Hutto, who had become romantically involved with his manager's wife (also an employee), was shot by his manager after being instructed that the manager wished to speak with him at his car in the parking lot. The court noted that Hutto was injured while responding to a directive from his supervisor, and that his death was "so strongly connected to the directive of his superior that it cannot be completely disassociated from his employment," so that his death was covered by the Act.[7] In *Hutto,* as in *Watson* and *Pittman,* the court obviously considered the shooting to have been "accidental," at least from the victim's standpoint, despite the fact that it was clearly intentional from the standpoint of the assailant. The focus of the court's analysis in each of these cases was on whether the assault "arose out of and in the course of employment," and on that issue, the court took a deliberately broad view in favor of the employee.

This court is certainly cognizant of the court's holdings in these cases, and particularly in *Pittman,* which seems the most similar to the case at bar, and the court likewise recognizes that the Mississippi Supreme Court has never expressly overruled *Pittman.* At the same time, however, this court is also aware that, with the exception of a single dissenting opinion by Justice Smith in *Blailock v. O'Bannon,* 795 So.2d 533 (Miss.2001), and a concurring opinion by Justice Southwick in *Goodman v. Coast Materials Company,* 858 So.2d 923 (Miss.Ct.App.2003), the Mississippi Supreme Court and Mississippi Court of Appeals have all but ignored *Pittman* for the past twenty years, and have apparently altered the analytical approach to issues of

Workers' Compensation coverage in cases where the question is not compensability of an employee's claim for benefits but rather whether the exclusivity bar precludes an employee from seeking a remedy outside the Workers' Compensation Act.

A shift in the focus of the inquiry, and in the court's view of what is "accidental," began in *Miller v. McRae's, Inc.,* 444 So.2d 368, 371 (Miss.1984). In *Miller,* the plaintiff did not seek to recover Workers' Compensation benefits, but rather had filed a civil action against McRae's and Jamal El-Amin, the head of McRae's Security Department, seeking to recover damages for her alleged humiliation, loss of reputation and physical illness claimed to have been suffered as a result of her false imprisonment in the McRae's store office. Miller alleged that after having her come to the store office, Jamal El-Amin began interrogating her about money that was missing from her department, and prohibited her from using the telephone or having freedom of movement by an implied threat of force, which conduct she contended was willful and malicious. McRae's asserted as an affirmative defense that the Workers' Compensation Act was the exclusive remedy available to Miller, but the Mississippi Supreme Court concluded otherwise.

Referencing the Act's definition of injury, the court stated that because "any injuries sustained as a result of a false imprisonment are not the result of an accident, but rather from a willful act," it was necessary to determine the meaning of that part of § 71–3–3(b) which provides that the term "injury" in the Act includes " 'an injury caused by the willful act of a third person directed against an employee

---

7. In reaching this conclusion, the court observed that the facts of the case were "unique" and that "the usual coemployee and third party cases heretofore decided are not directly applicable," *id.,* the former of which were distinguishable "because the present in-

jury was not occasioned by a coemployee but rather by a superior, the employer," *id.,* and the latter "because none of the injuries or death (in those cases) were caused by a fellow employee or employer," *id.*

because of his employment while so employed and working on the job....'" *id.* at 370–71. The court interpreted the term "third person," as used in this provision, "to mean either a stranger to the employer-employee relationship or fellow employee acting outside the scope and course of his employment." *Id.* "However," the court continued, "where an injury is caused by the willful act of an employee acting in the course and scope of his employment and in the furtherance of his employer's business, the Workmen's Compensation Act is not the exclusive remedy available to the injured party." *Id.* at 371.

The court reached the same result in *Royal Oil Co., Inc. v. Wells*, 500 So.2d 439, 442 (Miss.1986), holding that the plaintiff was free to pursue a civil suit for malicious prosecution, false imprisonment, false arrest and slander against the employer and a fellow employee based on allegations that the employee, Curtis Miller, had initiated a criminal charge of embezzlement against Wells by executing and filing a criminal affidavit against her after having been informed by a customer that Wells had taken some money from the store. The court rejected the defendants' argument that the Workers' Compensation Act provided Wells' exclusive remedy, stating,

> *Miller* ... holds that the Workers' Compensation Act does not bar an employee from pursuing a common law remedy against his employer for an injury caused by his employer's wilful and malicious act. Malicious prosecution is an intentional tort and is within those rights of action an employee may maintain against his employer consistent with the compensation act.
>
> Curtis Miller, as an agent for Royal Oil Company, is not a "third person" for purposes of § 71–3–3(b). He occupies

the same legal posture as the security chief sued in *Miller*.

*Id.* (citations omitted).

In *Griffin v. Futorian Corp.*, 533 So.2d 461 (Miss.1988), the facts of which are not especially relevant here, the Mississippi Supreme Court interpreted *Miller* as having established

> two elements necessary for an injured employee to avoid the Mississippi Worker's Compensation Exclusive Liability Provision: (1) the injury must have been caused by the willful act of another employee acting in the course of employment and in the furtherance of the employer's business, and (2) the injury must be one that is not compensable under the act.

*Id.* at 463 (citing *Miller*). The court continued to interpret *Miller* in this manner through a number of subsequent decisions, including *Blailock v. O'Bannon*, 795 So.2d 533 (Miss.2001), which presented a scenario similar to that considered in *Miller*. In *Blailock*, the plaintiff, a saleswoman at Dillards, claimed that O'Bannon, a manager, had intentionally assaulted her, committed battery, falsely imprisoned her and caused her emotional distress when O'Bannon grabbed her arm and began pulling her to an office for disciplinary action. The court undertook to analyze the question whether the exclusivity bar applied by reference to the then familiar two-part *Miller* test, stating,

> Part of the damages sought by Blailock (physical pain and suffering due to the alleged wrenching of her arm, emotional distress, loss of wages, special damages for the loss of the opportunity to compete in the Senior Olympics and punitive damages) are not compensable under the Act because they are alleged to have been caused by willful and intentional acts, not negligent or grossly negligent acts. The damages did not arise from

accidental injury or an accidental death. The allegations of Blailock's complaint certainly meet the two criteria set out by the Court in *Griffin.* Blailock must prove that O'Bannon was working in the course and scope of her employment when she allegedly committed the intentional torts, that O'Bannon's alleged acts were committed with an actual intent to inflict injury, and that Blailock suffered injuries as a result, but the allegations of intentional acts certainly take Blailock's non-compensable claims out of the jurisdiction of the WCC. Of course, a claim for her injuries that are compensable under the Act are still subject to the WCC.

*Id.* at 535–36.

The court's explanation of its holding in *Blailock* can best be understood by reference to the obvious fact that the court was undertaking to be faithful to the two-part *Miller,* which the court continued to articulate as the basis for determining whether a co-worker's intentional torts were covered by the Act[8] until its opinion in *Newell v. Southern Jitney Jungle Company,* 830 So.2d 621 (Miss.2002). *Newell* did not involve an intentional tort by a co-worker but rather the shooting of an employee, while on the job, by the employee's estranged husband. When the employee sued in tort to recover damages from her employer for its alleged negligence in failing to prevent the assault, the court held that her injuries were not covered by the Workers' Compensation Act "because the incident had nothing whatsoever to do with Newell's employment," *id.* at 624, noting

the obvious, that "[a]n injury intentionally caused by a third-party acquaintance of the employee for reasons not arising out of the employee's job or because of the job is not compensable under the Act." *Id.* The court, however, took the opportunity to "clarify a misinterpretation of the exclusivity test by prior opinions of this Court," *id.* at 624, and stated that whereas opinions subsequent to *Miller* had purported to identify "two prongs of the exclusivity test" of *Miller,*

> *Miller,* in fact, does not state a two-part test. . . . Rather, the *only* test articulated in *Miller* is *whether the injury is compensable under the act.* The Court's entire discussion in that case, from which we later articulated a two-part test, was an effort to answer that sole question-compensability of the injury. A close reading of *Miller* reveals that the first prong of the test is not a separate requirement as we later interpreted it to be. Rather, the first prong is merely part of the inquiry into whether the injury is, in fact, compensable. *Id.*

*Id.*

In *Goodman v. Coast Materials Company,* 858 So.2d 923 (Miss.Ct.App.2003), the Mississippi Court of Appeals considered *Newell*'s clarification of *Miller* in a case in which an owner and an employee of Coast Materials got into a dispute with another employee, Goodman, about whether he had failed to show for work on a certain day. A fistfight occurred between the two employees in which both were injured. After

8. *See Peaster v. David New Drilling Co., Inc.,* 642 So.2d 344, 346 (Miss.1994) ("In order to avoid the exclusivity of the Workers' Compensation Act, this Court has set out the two elements that must be met: (1) the injury must be caused by the willful act of the employer or another employee acting in the course of employment and in the furtherance of the employer's business, and (2) the injury must be one that is not compensable under the act.") (citing *Futorian* and *Miller*); *see also Lewallen v. Slawson,* 822 So.2d 236, 238 (Miss.2002) (stating, "If both of these elements are met, then it is appropriate to pursue a claim outside of the confines of the statute. Otherwise, the claimant is only entitled to the compensation provided under the statute.").

receiving about $7,000 in workers' compensation benefits, Goodman filed a tort suit. The court recognized that under *Miller*, as clarified in *Newell*, the correct inquiry is whether the injury is compensable under the Act, which is resolved by determining whether the injury is "of a kind that is compensable" and "whether the injury is an accidental one as defined in section 71–3–3(b)." According to the court, the conclusion that "injuries resulting from the willful or intentional acts by fellow employees are not 'accidental'" follows from the fact that "[t]he statutory definition includes injuries caused by a willful act committed by someone who is a stranger to the employment relationship," *Id.* at 925. Hence, since Goodman had brought suit for what he alleged was an intentional assault by his co-employee, the court "[found] no argument under the present state of the law to dismiss this suit" based

on the exclusivity bar.[9] *Id. See also Davis v. Pioneer Inc.*, 834 So.2d 739 (Miss.Ct. App.2003) (finding that damages for assault and battery by one coworker of another arising from work-related dispute were not compensable under the Act "because they stem from a wilful and intentional act, not a negligent or grossly negligent act"); *Bevis v. Linkous Const. Co., Inc.*, 856 So.2d 535, 543 (Miss.Ct.App.2003) (holding that "only wilfully inflicted injuries are excepted from the exclusivity provisions of workers' compensation law because such injuries do not, at any point in the analysis, invoke the concept of an accidental injury").

Like the court in *Goodman*, this court can "find no argument under the present state of the law to dismiss this suit" based on the exclusivity bar." 858 So.2d at 925. Whereas the Mississippi Supreme Court had held in the *Pittman* line of cases that

---

**9.** In reaching this conclusion, the majority opinion in *Goodman* observed that after *Newell*, there is still a right to bring a civil suit against an employer for "some intentional torts committed by co-employees," and that intentional acts by co-employees "may be the basis for such tort suits." *Id.* In his concurring opinion, Justice Southwick recognized this, too, but he also noted that "the caselaw being applied appear[ed] askew," and he thus suggested "the need for continued review of the issues in light of *Newell*-which exposed some of the *Miller* fallacies-and of the complications that result in trying to piece together what is left." *Id.*

As interpreted by Justice Southwick, the *Miller* court, on the premise that the negative of the definition of injury was implied, had determined, mistakenly, that since willful acts of strangers to the employment relationship are covered by the Act, that must mean that intentional acts of individuals who are *not* strangers are not covered by the Act and hence are free of the Act's exclusivity. *Id.* at 926. Indeed, he said, "[t]he source of *Miller*'s logical difficulties is that it depends entirely on the Act's applicability to willful acts of strangers to create an exclusion for willful acts of co-employees." *Id.* at 928. He went

on to observe that even though the Supreme Court has never explicitly questioned the continuing validity of *Pittman*, by its holding in *Miller* and its progeny, the court "may have unconsciously but unavoidably overruled the theory of the co-employee assault cases that were found to permit coverage under the Act," *id.* at 925, when it need not (and should not) have done so, *id.* at 928. He proposed that the "most fruitful approach" to dealing with the problems created by *Miller* would be "to abandon the remnants of *Miller* outright" and to "read the co-employee assault cases like *Pittman* as still being in effect," *id.* at 925, 59 So.2d 547. Yet while he considered that "*Miller* is not the most carefully reasoned of precedents, distorts other caselaw with a better analytical pedigree such as *Pittman*, and will continue to sow confusion as long as it remains at work in this legal field," he agreed with the majority that "Goodman sufficiently described grounds for a separate suit under the *Miller* understanding of workers' compensation exclusivity." *Id.* at 928. Consequently, he observed that "[u]ntil some additional clarification is brought to these issues, civil suits such as Goodman's must be allowed to proceed unless something has occurred to forfeit the right to bring a separate action." *Id.*

intentional torts by coworkers-at least those intentional torts that were not shown to have been completely disassociated from the employment relationship-were considered accidental injuries covered by the Act, it is clear from the foregoing review of the more recent Mississippi cases, beginning with *Miller*, that the Mississippi courts have taken a different approach to the issue of compensability of such injuries, at least where exclusiveness of remedy is at issue. Although the analytical rules established by these cases obviously do not account for earlier cases such as *Pittman*, they are rules which this court cannot ignore.

 In accordance with these cases, where an employee has been injured or killed at work as the result of a willful, intentional act of someone who is a stranger to the employment relationship, the employee's injury or death is compensable under the Workers' Compensation Act, and the exclusivity bar applies, if such person's act was directed against the employee "because of his employment while so employed and working on the job." This was the basis for the courts' conclusions that benefits were payable in such cases as *Big "2" Engine Rebuilders v. Freeman*, 379 So.2d 888 (Miss.1980) (holding that a route salesman who stopped to assist an apparently disabled motorist and who was rendered permanently and totally disabled when the motorist struck him with a gun was entitled to workmen's compensation benefits), and *Williams v. Munford, Inc.*, 683 F.2d 938 (5th Cir.1982) (holding that a convenience store clerk who was raped in the course of a store robbery was limited to the remedies under the Act). Conversely, if an employee is injured or killed on the job by a third person for reasons that have nothing to do with the victim's employment, the injury or death is not compensable under the Workers' Compensation Act, as was the case in *Newell*.

 Where an employee has been injured or killed at work as the result of a willful, intentional act *of a coworker*, if the claims are of a type that are not recoverable under the Act, the exclusivity bar obviously does not apply. If the damages sought are of a type that are recoverable under the Act, the question whether the injury or death is compensable solely under the Act, or whether the employee or his representative may sue in tort to recover damages, depends on whether the employee was acting within or without the course and scope of his employment. Thus, if in committing an assault, the employee/assailant was acting outside the course and scope of his employment, his status is viewed as analogous to that of a stranger to the employment relationship, and his act falls within the coverage of the Act, and subject to the exclusivity bar, only if directed against an employee "because of his employment while so employed and working on the job." Hence the court's holding in *Hawkins v. Treasure Bay Hotel & Casino*, 813 So.2d 757, 759 (Miss.Ct.App.2001), that the Act did not provide compensation for the injuries sustained by an employee who was stabbed several times by a coworker stemming from a personal grievance between the two (who, in addition to being co-employees, were also roommates). The assailant, the court held, was acting outside the scope of her employment, and her assault was not directed against Hawkins because of Hawkins' employment while on the job.

 On the other hand, if in committing an assault, the employee/assailant was acting in the course and scope of his employment and in furtherance of his employer's business, then the injury caused thereby is not compensable under the Act, and consequently the exclusivity bar does not apply. *See Miller*, 444 So.2d at 371. Indeed, in cases where it could reasonably be con-

cluded that the employee committing the alleged tort was acting in the course and scope of his employment and in furtherance of the employer's business, it has been held that the employee's wilful assault of a co-worker did not fall under the Workers' Compensation Act *See Goodman,* 858 So.2d 923 (assault occurred in course of argument over whether injured employee failed to show up for work); *Blailock,* 795 So.2d 533 (intentional tort was based on one employee's escorting another employee to office for disciplinary action); *Davis,* 834 So.2d 739 (assault occurred in course of disagreement over how to print document as part of employer's business); *Royal Oil Co.,* 500 So.2d 439, 442 (Miss. 1986) (intentional tort allegations were based on one employee's having initiated criminal charge against another employee for embezzlement of employer's funds); *Miller,* 444 So.2d 368 (intentional torts stemmed from one employee's detaining another employee concerning money missing from department).[10]

■ The conclusion that an employee's intentional torts against another employee that are committed outside the course and scope of employment are not covered (unless directed against another employee because of that employee's job) simply recognizes that an employee who is not acting in the scope of his employment should not be considered an employee, but rather a "third person" for purposes of analysis under the statute's definition of injury. And the rationale supporting the conclusion that intentional torts committed by an employee in the course and scope of employment and in furtherance of his employer's business are not covered, is not necessarily clear, but is perhaps that under the law of agency, the former cannot be attributed to the employer and hence cannot be viewed as an intentional act of the employer, whereas the latter are attributable to the employer,[11] and, being an intentional act of the employer, is not an accidental injury (at least not from the standpoint of the employer) and for that

10. Lockheed–Martin argues that the more recent cases holding that intentional torts are not covered by the Act's definition of "injury" because they involved intentional torts by owners or managers. That can explain some, but by no means all, of these cases. For example, in *Royal Oil,* the criminal complaint that was the basis for the plaintiff's malicious prosecution complaint was not initiated by a manager or owner but by an employee who apparently had no managerial or supervisory status. And in *Goodman,* although the verbal disagreement that preceded the assault was between the owner and one employee on one side, and the plaintiff on the other, the assault was committed not by the owner but by the employee. It does not appear, then, that the only intentional torts excluded from coverage are those committed by owners or employees who hold supervisory or managerial positions, and neither the Mississippi Supreme Court nor the Mississippi Court of Appeals has ever so held.

11. In *Adams v. Cinemark USA, Inc.,* 831 So.2d 1156, 1159 (Miss.2002), the Mississippi Su-

preme Court, addressing whether an employer was vicariously liable for its employee's assault on a patron (and ultimately holding that it was not), explained this principle of vicarious liability as follows:

An employer is liable for the torts of his employee only when they are committed within the scope of employment. To be "within the scope of employment," the act must have been committed in the course of and as a means to accomplishing the purposes of the employment and therefore in furtherance of the master's business. Also included in the definition of "course and scope of employment" are tortious acts incidental to the authorized conduct. Stated another way, a master will not be held liable if the employee "had abandoned his employment and was about some purpose of his own not incidental to the employment." That an employee's acts are unauthorized does not necessarily place them outside the scope of employment if they are of the same general nature as the conduct authorized or incidental to that conduct. *Id.* (citations omitted).

reason is not compensable under the Act.[12] Whatever the reasoning may be, however, and regardless of whether these more recent cases can logically be squared with the earlier cases in the *Pittman* line,[13] it is clear that under the present state of the law in Mississippi, this case cannot be dismissed on the basis of the Workers' Compensation exclusivity bar, for in the court's opinion, there is nothing to suggest that at the time of the shootings at the Lockheed–Martin plant, the assailant, Williams, was acting in the course and scope of his employment and in furtherance of his Lockheed–Martin's business, or that his actions, which were certainly outside the course and scope of his employment, were directed against his victims "because of their employment." [14]

Accordingly, it is ordered that Lockheed–Martin's motion for summary judgment is denied.[15]

**12.** *See Bevis v. Linkous Constr. Co., Inc.,* 856 So.2d 535 (Miss.Ct.App.2003) (*"Miller* stands for the very limited principle that, if the employee is injured by a purposeful and wilful act of the employer, the claim is simply not cognizable under workers' compensation law because it did not arise as the result of a work-related accident.").

**13.** It seems to the court that the most likely factor distinguishing the *Pittman* and *Miller* lines of cases is that the former were cases in employees sought to recover benefits under the Act, so that no issue of the exclusivity bar was raised, and in those cases, the court interpreted the Act liberally in favor of the employees to afford coverage where it perceived that compensation might not otherwise have been available. In contrast, the issue of the exclusivity bar was at the forefront in the *Miller* line of cases since in those cases, the employees sought to recover damages in tort. It seems that in those cases, as well, the court undertook to interpret the Act in the manner most favorable the employees' position. These policy considerations, more than anything else, appear to explain the apparent inconsistency in the court's analysis of these cases.

**14.** The court recognizes that the shootings here did not arise out of a specific personal disagreement between Williams and Willis, or between Williams and his other victims and that this case does not fit the mold of cases where a personal dispute between coworkers extraneous to the work relationship is brought into the workplace. *See, e.g., Jackson v. Sanderson Farms, Inc.,* 20043 WL 22598557 (Miss. Work Comp. Com. Oct. 22, 2003) (holding that assault of an employee by coworker while both were at work on the job stemming from dispute over personal loan by one to the other was not covered by the Act since the argument and resulting altercation were not work related or reasonable incidental to the claimant's employment). The court also recognizes that the shootings did not involve any duties relevant or reasonable incidental to the employment, and could have been committed at anyplace, not just the workplace.

**15.** The court notes that plaintiff has argued that the exclusivity bar is inapplicable both because "Lockheed–Martin acted intentionally" in failing to take steps to prevent the shooting and/or that Willis's co-worker, Williams, acted intentionally, so that, according to plaintiff, regardless of how the issue of causation is viewed, it is manifest that his death was not "accidental" and thus does not qualify as a compensable injury under the Workers' Compensation Act. Plaintiff's contention that Thomas Willis's death was caused by Lockheed–Martin's "intentional" failure to protect Willis is grounded on her allegation that Lockheed–Martin took no action to protect Willis and his co-workers even though it was keenly aware that the assailant, Williams, was an emotionally disturbed individual who was consumed with racial hatred, and knew that Williams desired to inflict harm against his black co-workers and knew that Williams routinely brought loaded guns in his truck to work.

Plaintiff's assertion that Lockheed–Martin's failure to act for Willis's protection in the face of all this information is properly considered an "intentional" tort so that the exclusivity bar is inapplicable finds no support in the

law. The Mississippi Supreme Court has consistently held that

"[A] mere willful and malicious act is insufficient to give rise to the intentional tort exception to the exclusive remedy provisions of the Act." There must be a finding of an "actual intent to injure." Reckless or grossly negligent conduct is not enough to remove a claim from the exclusivity of the Act. *Peaster v. David New Drilling Co.,* 642 So.2d 344, 348, 349 (Miss.1994).
*Blailock v. O'Bannon,* 795 So.2d 533, 537 (Miss.2001); *see also Peaster v. David New Drilling Co.,* 642 So.2d 344, 348, 349 (Miss. 1994) (holding that "in order for a willful tort to be outside the exclusivity of the Act, the employee's action must be done 'with an actual intent to injure the employee.' ").