United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 14, 2005**

Charles R. Fulbruge III
Clerk

REVISED JULY 28,2005

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-60028
_____

ERICA WILLIS TANKS, as Administrator of
the Estate of THOMAS WILLIS, as Personal
Representative of THOMAS WILLIS, for the
Benefit of All Heirs of THOMAS WILLIS, and
as natural daughter of THOMAS WILLIS,

Plaintiff-Appellee,

versus

LOCKHEED MARTIN CORP; ET AL,

Defendants,

LOCKHEED MARTIN CORP.; LOCKHEED MARTIN
AERONAUTICAL SYSTEMS SUPPORT CO., doing
business as LOCKHEED MARTIN AERONAUTICS
COMPANY-MARIETTA,

Defendants-Appellants.

--------------------
Appeal from the United States District Court
for the Southern District of Mississippi

--------------------

Before WIENER, DeMOSS, and PRADO, Circuit Judges.

WIENER, Circuit Judge.

Defendants-Appellants Lockheed Martin Corp. and Lockheed

Martin Aeronautical Systems Support Co. ("Lockheed") took this

interlocutory appeal, certified by the district court pursuant to

28 U.S.C. § 1292(b), seeking reversal of the district court's

partial summary judgment in favor of Plaintiff-Appellant Erica Tanks. The district court held that, under the discrete facts and circumstances of this case, the "exclusive remedy" provision of the Mississippi Workers' Compensation Act ("MWCA" or "the Act"),[1] which generally precludes an employee from recovering from his employer on a state law tort cause of action, does not preclude Tanks from pursuing against Lockheed her state tort cause of action based on the workplace death of her father, Thomas Willis ("Willis" or "decedent"). The district court nevertheless certified, for interlocutory appeal, the question whether the MWCA provides the exclusive remedy for Tanks's state law claims. Our grant of Lockheed's appeal on the single issue thus certified limits our review to that question.

As an initial matter, we disagree with the district court's view that the question it certified to us is an open one under these circumstances, and thus decline to certify it further to the Supreme Court of Mississippi. Deciding this question as we believe the Supreme Court of Mississippi has and would, we conclude that, under the current state of the applicable Mississippi jurisprudence, Willis's death —— which was a result of the willful act of a co-worker while both men were on the job —— is compensable under the MWCA. This in turn makes compensation under the MWCA

---

[1] Miss. Code Ann. § 71-3-1, et seq., (2004). All Code references are to the 2004 Mississippi Code Annotated unless otherwise indicated.

Tanks's exclusive remedy against Lockheed. We therefore reverse the non-exclusivity ruling of the district court vis-à-vis Tanks's state law tort claims, render a partial summary judgment for Lockheed, dismissing Tanks's state law claims, and remand this case for proceedings on the federal claims advanced in her Third Amended Complaint.

## I. FACTS AND PROCEEDINGS

This case arises from a horrific tragedy that occurred in July 2003, at Lockheed's plant in Lauderdale County, Mississippi. At the time, the decedent was an assemblyman who had been employed by Lockheed for more than 33 years; a co-worker, Douglas Paul Williams, was also an assemblyman in that plant and had been employed by Lockheed for 19 years. Willis, who was black, and Williams, who was white, regularly worked in close proximity to each other. Both perished at Lockheed's plant from gunshot wounds inflicted by Williams in the course of a shooting spree during which Williams killed or wounded several of his co-workers before turning one of his guns on himself. In addition to the decedent, a number of other Lockheed employees — some black, some white — were shot by Williams during the course of his rampage: Some of the other victims died from their gunshot wounds; others survived. Like the decedent and Williams, all the other victims were Lockheed employees who were at the plant and at work at the time that they were shot.

In her original diversity-jurisdiction tort complaint filed in district court, and again in her Third Amended Complaint, Tanks related numerous factual allegations detailing Williams's longstanding and widely-known bigotry against his African-American "co-workers." Her complaints are entirely devoid, however, of allegations of any demonstrated racial animus or overt acts against African-Americans, either co-workers or non co-workers, anywhere outside the Lockheed plant site. Stated differently, Tanks's allegations of Williams's hatred, prejudice, and bigotry towards blacks exclusively address his co-workers and his workplace. For example, she alleged that Williams harbored racial hatred towards his African-American "co-workers"; that he was known to be violent towards his "co-workers"; that Lockheed was aware of Williams's animus towards his "co-workers and Lockheed's management at the Plant"; that Williams "came to work and parked in the employee parking lot with loaded firearms in his truck"; that he informed Lockheed of his hatred towards his "co-workers," warning that, if his being required to work with blacks were not alleviated, "violent consequences could occur"; that he had made threatening remarks to African-American "co-workers"; that he and a fellow white "co-worker" had attempted to intimidate their African-American "co-workers"; that Williams instigated racial taunts and abuse towards his African-American "co-workers"; and on and on. In essence, all of Tanks's allegations that implicate Williams's overt racism and anti-black animus are made exclusively in the context of

4

the workplace and his "co-workers," black and white. These allegations are obviously intended to support Tanks's state tort claims (and, eventually, federal discrimination claims) against Lockheed, grounded in, inter alia, negligence, gross negligence, willful and wanton inaction in the face of longstanding knowledge of Williams's condition and the threat to the safety of co-workers on the job.

After limited discovery, Lockheed moved for partial summary judgment on the pleadings and several uncontested facts submitted by it, including its compliance with its MWCA duty to insure its liability for workers' compensation benefits. Lockheed argued that Williams's injury is compensable under the MWCA, and, consequently, that Lockheed is entitled to immunity from Tanks's other state tort law claims on the basis of the Act's exclusive remedy provision. The district court nevertheless agreed with Tanks that Willis's death was not compensable under the Act and denied summary judgment. Lockheed moved for reconsideration or, in the alternative, certification of the question for interlocutory appeal. The district court denied reconsideration but certified the action for interlocutory appeal. In granting the motion for interlocutory appeal, the district court identified as a material legal question under 28 U.S.C. § 1292(b) the compensability of Willis's fatal injury under the MWCA, characterizing the state of the law as unsettled, and noting the centrality of the question to

the claims and this court's authority to certify such a question to the Supreme Court of Mississippi.

## II. ANALYSIS

A.    Standard of Review

The district court certified its decision for interlocutory appeal, and we granted Lockheed's motion for leave to appeal the district court's denial of its motion for summary judgment pursuant to our authority under 18 U.S.C. § 1292(b).  Although we ordinarily review a district court's summary judgment ruling de novo,[2] our appellate jurisdiction under § 1292(b) extends only to controlling questions of law, thus, we review only the issue of law certified for appeal.[3]  We therefore determine de novo whether the district court properly interpreted the MWCA, using the same method of interpretation as would the Mississippi Supreme Court.[4]

B.    Interpreting the MWCA

The district court denied Lockheed's motion for summary judgment, concluding that, even though Mississippi case law interpreting the MWCA is unclear, the decedent's injuries were not compensable under the Act.  Therefore, reasoned the court, the MWCA's exclusive remedy provision did not bar Tanks from pursuing

---

[2] MacDonald v. Monsanto, 27 F.3d 1021, 1023 (5th Cir. 1994).

[3] Malbrough v. Crown Equip. Corp., 392 F.3d 135, 136 (5th Cir. 2004).

[4] See La. Patients' Comp. Fund Oversight Bd. v. St. Paul Fire & Marine Ins. Co., No. 04-30591, 2005 U.S. App. LEXIS 10431 at *6 (5th Cir., June 7, 2005).

other state law remedies.  We agree with the district court's thorough discussion of Mississippi case law,[5] including its determination that an earlier line of decisions, beginning with <u>Mutual Implement & Hardware Insurance Co. v. Pittman</u>[6] in 1952, appears to conflict with a later line, commencing with <u>Miller v. McRae's</u>[7] in 1984.  We shall not retrace the district court's careful analysis except to reiterate briefly the rules that undergird our decision.

1.    Elements of Proof: Compensability for Co-Worker Assault under the MWCA

Under the MWCA and the Mississippi jurisprudence that has evolved over the past six decades, if the injury (here, death) is compensable under the Act, compensation under the MWCA is the exclusive state law tort remedy available to the employee or his successors.[8]  Courts determine whether a plaintiff is entitled to compensation under the MWCA or whether his other tort claims are barred by the MWCA's exclusivity provision, by inquiring <u>only</u> "whether the injury is compensable under the act."[9]  The sole issue

---

[5] <u>See</u> <u>Tanks v. Lockheed-Martin Corp.</u>, 332 F. Supp. 2d 953, 956-64 (S.D. Miss. 2004).

[6] 59 So. 2d 547 (Miss. 1952).

[7] 444 So. 2d 368 (Miss. 1984).

[8] Miss. Code Ann. § 71-3-9; <u>Hurdle v. Holloway</u>, 848 So. 2d 183, 185 (Miss. 2003).

[9] <u>Newell v. S. Jitney Jungle Co.</u>, 830 So. 2d 621, 625 (Miss. 2002).

before us, then, is whether Willis's injury, i.e., his death from the intentional shooting at the hands of a co-worker while both were at work, is compensable under the Act.

Under § 71-3-7 of the MWCA, an employer is liable to pay compensation for the disability or "death of an employee from <u>injury</u>...arising out of and in the course of [his] employment, without regard to the fault as to the cause of the injury...."[10] In the definitional section of the Act (§ 71-3-3), subsection (b) defines "injury" to mean

> <u>accidental...death</u> arising out of and in the course of employment without regard to fault <u>which results from an untoward event</u>...if contributed to or aggravated or accelerated by the employment in a significant manner....Untoward event includes events causing unexpected results. An untoward event or events shall not be presumed to have arisen out of and in the course of employment, except in the case of an employee found dead in the course of employment.

The final narrowing of the focus of this definition is found in the ensuing sentence in § 71-3-3(b): "This definition...includes an injury caused by the <u>willful act of a third person directed against an employee because of his employment while so employed and working on the job</u>...."[11]

Despite this explicit language defining injury to include willful acts by a third party, the Mississippi Supreme Court's <u>Pittman</u> line of cases, beginning shortly after enactment of the

---

[10] Miss. Code Ann. § 71-3-7 (emphasis added).

[11] Emphasis added.

MWCA in 1942, implicitly relied on a presumption that willful assaults by <u>co-workers</u> were accidental.[12] In <u>Pittman</u>, the court held such attacks to be risks "incident to employment of many persons" and therefore compensable under the MWCA.[13] In <u>Pittman</u> and later cases, the Mississippi court focused on whether an assault arose "out of and in the course of employment" rather than focusing on the intent of the assailant.[14]

In 1984, however, "[a] shift in the focus of the inquiry, and in the court's view of what is 'accidental,' began."[15] In <u>Miller</u>, the Mississippi Supreme Court decided that a claim for damages resulting from false imprisonment arose not from an accident but from a willful act, making it necessary to determine whether such an intentional act was encompassed within § 71-3-3(b)'s definition of compensable injury, <u>viz</u>., whether it was "an injury caused by [1] the willful act [2] of a third person [3] directed against an employee [4] because of his employment [5] while so employed and

---

[12] <u>Tanks</u>, 332 F. Supp. 2d at 958 ("In <u>Hutto</u>, as in <u>Watson</u> and <u>Pittman</u>, the court obviously considered the shooting to have been 'accidental,' at least from the victim's standpoint...")(citing <u>Watson v. Nat'l Burial Ass'n, Inc.</u>, 107 So.2d 739 (Miss. 1958); <u>Kerr-McGee Corp. v. Hutto</u>, 401 So. 2d 1277 (Miss. 1981)).

[13] <u>Pittman</u>, 59 So. 2d at 553 (quoting <u>Verschleiser v. Joseph Stern Son, Inc.</u>, 128 N.E. 126, 127 (N.Y. 1920).

[14] <u>Tanks</u>, 332 F. Supp. 2d at 958.

[15] <u>Id.</u>

working on the job..."[16]  A "third person," the court concluded, includes a co-worker who is <u>not</u> acting in the course and scope of his employment and in furtherance of the employer's business.[17]

Here, in summarizing the <u>Miller</u> line of cases, the district court explained when intentional assaults by third parties or co-workers acting outside the course and scope of their employment are compensable under the MWCA:

> [I]f in committing an assault, the employee/assailant was acting outside the course and scope of his employment, his status is viewed as analogous to that of a stranger to the employment relationship, and his act falls within the coverage of the Act, and subject to the exclusivity bar, only if directed against an employee "because of his employment while so employed and working on the job."...On the other hand, if in committing an assault, the employee/assailant was acting in the course and scope of his employment and in furtherance of his employer's business, then the injury caused thereby is not compensable under the Act, and consequently the exclusivity bar does not apply.[18]

There is no question that three of the five <u>Miller</u> elements are satisfied in this case:  Williams's actions were (1) intentional and (2) directed at Willis (3) while Willis was "so

---

[16] <u>Miller</u>, 444 So.2d at 370-71.

[17] <u>Id.</u> at 371.  This interlocutory appeal of the district court's ruling, which is grounded in Tanks's original complaint only, does not implicate the federal constitutional and statutory claims that Tanks raised in her Third Amended Complaint, even though, for purposes of this appeal, Lockheed accepts as true all relevant facts alleged in Tanks's Third Amended Complaint.

[18] <u>Tanks</u>, 332 F. Supp. 2d at 962-63.

10

employed and working on the job."[19]  As for the first of the two remaining Miller elements, the district court concluded —— correctly —— that Williams must be considered a third party because he acted "outside the course and scope of his employment."[20]  But as for the second remaining Miller element, the district court concluded —— incorrectly under Miller —— that, despite the fact that Williams acted outside the course and scope of his employment, judgment of dismissal could not be granted to Lockheed on the basis of the MWCA's exclusivity bar.  The court's expressed reason was its inability to discern allegations or evidence suggesting that Williams's actions "were directed against his victims 'because of their employment.'"[21]  In contrast, we perceive a plethora of both. We shall, therefore, address in more depth these final two elements, viz., (1) whether Williams acted in the course and scope of his employment and (2) whether Willis was injured because of his employment.

2.    Acting Outside the Course and Scope of Employment; "Third Party" Status under the MWCA

We agree with the district court that Williams' actions were outside of the course and scope of his employment and must therefore be characterized as the acts of a third person.[22]  The

_____

[19] Miss. Code Ann. § 71-3-3(b).

[20] Id.

[21] Tanks, 332 F. Supp. 2d at 964 (emphasis added).

[22] See Miller, 444 So.2d at 371.

11

Mississippi Supreme Court defines actions taken in the "course and scope" of employment with respect to respondeat superior tort liability as acts "committed in the course of and as a means to accomplishing the purposes of the employment and therefore in furtherance of the master's business...[or] tortious acts incidental to the authorized conduct."[23] An employee's unauthorized acts may yet be within the course and scope of employment if they are of the "same general nature as the conduct authorized or incidental to that conduct."[24] An intentional violent assault on a co-worker is quite obviously neither committed as a means of accomplishing the purposes of the employment nor of the same general nature as authorized conduct.[25] None can seriously question

---

[23] Adams v. Cinemark U.S.A., Inc., 831 So. 2d 1156, 1159 (Miss. 2002).

[24] Id.

[25] See id. ("It is obvious that Thomas's tortious act of assaulting Adams was not authorized or in furtherance of Cinemark's business."). See also Hawkins v. Treasure Bay Hotel & Casino, 813 So. 2d 757, 759 (Miss. Ct. App. 2001)(holding intentional assault by co-worker to be outside the course and scope of employment). By contrast, when the court has denied coverage under the MWCA for intentional injuries, the assailant co-workers are arguably acting within the course and scope of their employment. See, e.g., Royal Oil Co. v. Wells, 500 So. 2d 439, 441-42 (Miss. 1986)(holding that employee's claims against her employer for malicious prosecution, arising out of a supervisor's charge that she had stolen money from a cash register, was not barred by the MWCA and noting that the supervisor who instigated false charges against her is not a third person for purposes of the Act); Miller, 444 So. 2d at 371 (noting that injury arose out of questioning and detainment by the head of defendant employer's security department as a result of the employer's suspicion that the plaintiff-employee was stealing funds).

12

that, for purposes of the MWCA, Williams's shooting spree was the act of a third person outside the course and scope of his employment.

3.   Injury "Because of" Employment

Injuries or death caused by the malicious and intentional acts of a third party are compensable if they are inflicted "because of" the employee's employment. It is the district court's statement that nothing suggests that Willis was injured "because of" his employment with which we disagree.  Williams's underlying <u>motivation</u> was rooted in his deep-seated racial hatred, but it is clear beyond cavil that his <u>willful act</u> <u>directed</u> at his <u>co-workers</u> while all were on the job was based on —— "because of" —— their <u>employment</u>.

"The words 'because of,' like the other broadly-construed words of causation with the Act, such as 'arising out of,' express the necessity of a nexus between the injury and employment."[26]  This nexus requires a showing of minimal causation: only "a rational connection [between] employment and injury" is necessary.[27] Whether the connection between the injury and the employment is close enough to demonstrate that a claimant was assaulted "because of" his employment is a factual question.[28]  Still, if the facts

---

[26] <u>Big "2" Engine Rebuilders v. Freeman</u>, 379 So. 2d 888, 890-91 (Miss. 1980).

[27] <u>Id.</u> at 891.

[28] <u>Id.</u>

13

surrounding the cause of an employment-related injury are undisputed, we will treat the issue as a legal one.[29]

The Mississippi Supreme Court has determined that the required nexus between an employee's injury and his job is not established when an intentional tort is the result of a personal vendetta and could have been committed anywhere as easily as at the place of employment.[30]   Otherwise, the court has reasoned, employees would be compensated for injuries or death caused by the employee's personal indiscretions and having nothing to do with the employer.[31] These hazards cannot reasonably be viewed as risks associated with employment; neither can their compensation serve the legitimate state interest in protecting employees from workplace injury.[32]

When even a tenuous relationship between an employee's job and an intentional injury inflicted by a third party exists, however, the court has held that the MWCA applies.  A traveling salesman, assaulted by a motorist whom the salesman stopped to help while on

---

[29] Green v. Glen Oaks Nursing Ctr., 722 So. 2d 147, 149 (Miss. Ct. App. 1998)(citing Wilson v. Int'l Paper Co., 108 So. 2d 554, 555 (Miss. 1959); Dependents of Roberts v. Holiday Parks, Inc., 260 So. 2d 476, 479 (Miss. 1972)).

[30] Big "2" Engine Rebuilders, 379 So. 2d at 891.  See also Ellis v. Rose Oil Co., 190 So. 2d 450 (Miss. 1966) (holding claimant unentitled to compensation under the MWCA as he was shot by his mistress's husband while at work and such injury had nothing to do with his employment); Brookhaven Steam Laundry v. Watts, 59 So. 2d 294 (Miss. 1952)(same).

[31] Big "2" Engine Rebuilders, 379 So. 2d at 891.

[32] Id.

his sales route, was held to have been injured because of his employment.[33] In concluding that the employee was injured because of his employment, the court cited the facts that (1) no personal vendetta motivated the employee's injury; (2) the employee violated no instructions concerning the manner in which he carried out his work; (3) the roadside stop did not cause the employee to deviate spacially or temporally from his delivery route; and (4) the salesman's conduct, helping stranded motorists, was an acknowledged incident of being on the road.[34]

We have interpreted Mississippi jurisprudence on whether an employee is injured "because of" his employment in a similarly broad manner. We determined, shortly after the Mississippi Supreme Court's above-discussed decision in Big "2" Rebuilders, that coverage under the MWCA may be established by considering the following factors: "(1) the injury occurred within the time frame of employment; (2) the employee was within the spatial area required by employment at the time of injury; and (3) there existed a causal connection between the activity causing injury and the interests of the employer."[35] In holding that a convenience store clerk's rape by a third party was compensable under the Act, we emphasized that the third factor requires a showing only that "the

---

[33] Id.

[34] Id.

[35] Williams v. Munford, Inc., 683 F.2d 938, 939 (5th Cir. 1982).

15

obligations or conditions of employment create a 'zone of special danger' out of which the injury arose," not a causal relation between the nature of the injury and the employment.[36]

With respect to the connection between Willis's injury and his employment, the district court stated that there was "nothing to suggest that at the time of the shootings...[the assailant]'s actions...were directed against his victims 'because of their employment,'" even though the court acknowledged that the shootings did not arise out of a specific personal disagreement between Williams and Willis.[37] We disagree. Tanks's allegations leave no doubt that Willis's injury, like those of other co-workers, resulted in principal part because of his longstanding employment alongside Williams. The district court's conclusion to the contary notwithstanding, we discern a plethora of indicators that confirm that the actions of the assailant, Williams, "were directed against his victims 'because of their employment.'"[38]

Specifically, Willis was on the job, at the exact time and place that his employment required him to be there; he was not violating any instructions in performing his job.[39] All relevant

---

[36] Id. (quoting Brookhaven Steam Laundry v. Watts, 55 So. 2d 381, 392 (Miss. 1951), rev'd in part and aff'd in part on rehearing, 59 So. 2d 294 (Miss. 1952)).

[37] Tanks, 332 F. Supp. 2d at 964 & n.14.

[38] Id.

[39] Williams, 683 F.2d at 939; Big "2" Engine Rebuilders, 379 So. 2d at 891.

16

allegations in Tanks's complaints demonstrate that the assailant's actions resulted from his ever-increasing and uncontrollable resentment that he was forced by Lockheed to work with, around, and under African American co-workers. Thus, Tanks's allegations are more than sufficient to establish the required minimal causal nexus between Willis's injuries and his employment. Indeed, she is likely judicially estopped from claiming otherwise on appeal.

In contrast, Tanks's complaints are devoid of any allegations that Williams ever acted out of racial animus anywhere other than at work. Indeed, Tanks's claim is replete with repeated assertions that these two co-workers, Williams and Willis, were longtime Lockheed employees who worked on the plant floor "in close proximity" to each other; that Williams harbored racial hatred toward his African American "co-workers" qua co-workers; that he was known to be violent "toward his co-workers"; that Williams came to work and parked in the employee parking lot with the loaded firearms in his vehicle; that he informed Lockheed of his hatred toward his black co-workers, that he was unhappy regarding his employment by Lockheed because of being forced to work with blacks, and that, if the situation were not alleviated, violent consequences could occur; that he made threatening remarks to black "co-workers"; that he emulated KKK members to intimidate "African American co-workers"; that Williams instigated racial taunts towards African American "co-workers"; same with "threats towards his co-workers"; and, finally and most importantly, that during his

17

work shift on the day of the tragedy, he entered the workplace armed and began firing at supervisors and co-workers, most —— but not all —— of whom were African Americans.  We cannot say that Williams's acts were directed toward the blacks among his black and white victims solely because they were black and not because of their employment:  Based on the pleadings and the record, Williams assaulted blacks (and whites) only at work.

All these examples permit no conclusion other than that the intentional acts of this third-party employee were indisputably directed against another employee (actually, several employees, black and white) because of his employment.  Under these overwhelming facts, the only viable conclusion is that, regardless of the ethnicity of the victims, Williams's acts of shooting cannot be separated from the employment status of his victims.  Again, Tanks's pleadings are devoid of allegations that Williams ever acted out against blacks elsewhere in the community —— not in stores or bars or restaurants or schools or playing fields or anywhere except the workplace.  His rampage was undeniably triggered by his uncontrollable anger at being forced to work, day after day, year after year, with co-workers who were African Americans.  We would turn a blind eye to reality if we were to conclude that Williams's willful acts were directed at most of these targets solely because they were black and not at all because they were longtime co-workers who were black (and white).  They were shot because they were African American co-workers or white

18

co-workers (supervisors who were enforcing Lockheed's equal opportunity employment practices).[40]

We are conscious of the apparent conflict between the _Pittman_ and _Miller_ approaches to determining whether injuries are compensable under the MWCA. The outcome of this case, however, is the same whether we follow the _Pittman_ line of cases, holding assault by one co-worker against another to be compensable as an _accident_, or the _Miller_ line of cases, holding such assaults to be compensable when a co-worker acts outside the course and scope of his employment _and_ because of the victim's employment. We therefore see no need to certify this question to the Mississippi Supreme Court.

### III. CONCLUSION

The perpetrator, Williams, was an employee who was on the job when he committed willful acts, as a third person, that were not taken in the course and scope of his employment and were directed against Willis, the victim and a co-worker of Williams, because of

---

[40] Tanks also argues that we should affirm the district court's ruling because she may be able to demonstrate that _Lockheed intended_ for Willis's injury to happen, and that this intent of the employer is sufficient to remove the case from the exclusivity bar of the MWCA. The Mississippi Supreme Court has _never_ held that an employer, even with actual notice of a third party's intent to harm an employee, is strictly liable for the acts of that third party on the employer's premises outside the confines of the MWCA. See _Newell v. S. Jitney Jungle Co._, 830 So. 2d 621, 624 (Miss. 2002)(holding employer not liable to employee shot at work by her husband, despite actual notice to the employer of the estranged husband's threats to harm the employee, as the court refused to impose strict liability on businesses for injuries inflicted by third parties on employees).

19

Willis's employment.  Thus, every element of coverage of a <u>willful</u> act under the MWCA is met.  And, pursuant to Mississippi case law, when there is coverage under the MWCA, workers' compensation is the employee's exclusive remedy against his employer vis-à-vis state tort causes of action.[41]  We therefore reverse the district court's denial of Lockheed's motion for partial summary judgment, render judgment granting that motion and thus dismissing Tanks's state law claims, and remand the case for further proceedings consistent with this opinion.

REVERSED AND RENDERED IN PART, and REMANDED IN PART.

DeMOSS, Circuit Judge, specially concurring:

This case presents a classic federalism issue.  In my view there is no area of law more "truly local" in nature and effect than state workers' compensation law.  *See Lopez v. United States*, 514 U.S. 549, 568 (1995).  I am disappointed, therefore, that I was unable to persuade my colleagues on this panel to certify to the Supreme Court of Mississippi the same narrow question presented to us on interlocutory appeal.

The district judge read the controlling Mississippi statute and relevant Mississippi cases and concluded, contrary to our instant holding, that the alleged injury is not compensable under the MWCA, given the competing *Miller* and *Pittman* lines of Mississippi cases.  This disagreement on a foundation of fluid Mississippi law, especially in a case where multiple injured

---

[41] The federal discrimination claims first advanced in the Third Amended Complaint are not before us in this interlocutory appeal.

parties have filed multiple claims in both state and federal courts, weighs heavily in favor of certification to the Supreme Court of Mississippi. While we may not compel the Supreme Court of Mississippi to accept a certification of the question, the possibility that the Mississippi Court would refuse should not counsel against our submission. Had we certified the question and the Supreme Court of Mississippi declined to accept, we would have no alternative but to offer our "*Erie* guess"; but if the Supreme Court of Mississippi had accepted and answered the question certified, the parties in this case and the parties in the several other law suits involving other victims of this same tragic and unusual case of workplace violence would have the definitive answer from the highest court in the state that enacted the controlling statute.

I do concur in the well-reasoned and -written opinion authored by Judge Wiener as our best guess of what the Supreme Court of Mississippi would conclude if the question were actually before it. I simply think we should have provided the opportunity to get the answer directly from the truly final authority.